Andra GAINES *v.* STATE of Arkansas

CR 99-88 8 S.W.3d 547

Supreme Court of Arkansas
Opinion delivered January 20, 2000

*Donald A. Forrest*, for appellant.

*Mark Pryor*, Att'y Gen., by: *Brad Newman*, Ass't Att'y Gen., for appellee.

ANNABELLE CLINTON IMBER, Justice. Andra Gaines was convicted of three counts of capital murder and one count of first-degree battery. He was sentenced to three terms of life imprisonment on the capital murder charges, to run concurrently with a twenty-year term on the battery charge. On appeal, he raises seven points for reversal. We affirm.

In 1996, Mr. Gaines lived at the West Memphis Housing Authority project. He and Brenda Davis, who lived nearby at the Imperial Homes complex, had been involved in a romantic relationship for about three years. Although the Imperial Homes complex and the Housing Authority project were separated by a chain-link fence, an opening in the fence allowed access by foot from one complex to another. Each unit at the Imperial Homes complex had four apartments, two upstairs and two downstairs, with an inside stairway providing access to the upstairs apartments.

Testimony at trial established that Mr. Gaines and Ms. Davis had a particularly volatile relationship. He was extremely jealous of her relationships with other men and frequently made threats to

harm Ms. Davis. An order of protection that was issued by the chancery court on May 15, 1996, excluded Mr. Gaines from Ms. Davis's residence based upon her allegations that Mr. Gaines had beaten her. Shortly thereafter, Mr. Gaines was shot in the legs by Ms. Davis's brother, Eric Davis. On June 9, 1996, a fire suddenly broke out in an apartment that was close to the apartment where Ms. Davis lived. According to Ms. Davis, Mr. Gaines made the following remark to her soon after that fire: "the fire should have came [sic] down a little further." As a result of the fire, Ms. Davis moved to another upstairs apartment in the complex. Mr. Gaines was a possible suspect in the investigation of the June 9 fire, but no charges were ever filed against him. Mr. Gaines threatened Ms. Davis again on June 14, 1996, when he told her that he was "going to get [her] and [her] brother for everything [they] had did [sic] to him." About that same time, Delisha Stennett heard Mr. Gaines threaten to line Ms. Davis and her family up against a fence and "have his boys from Little Rock come in and kill them all."

On June 22, 1996, at approximately 4:30 a.m., a second fire broke out at the Imperial Homes complex. This fire destroyed the two upstairs apartments in the unit where Ms. Davis lived. She attempted to escape through her front door, but the heat from the door knob burned her hand. She then found her way through the smoke to a bedroom window, jumped out of the window, and landed on the ground without injury. The occupants of the other upstairs apartment were not so fortunate. Patrice Hardin discovered the fire in the stairwell after she smelled smoke and opened the door to her apartment. Three young children who were asleep in that apartment died in the fire. Patrice and fourteen-year-old Alicia Warren managed to escape, although Alicia was badly burned. According to a West Memphis Fire Department paramedic, Alicia's condition was life-threatening because she sustained second- and third-degree burns to thirty-five percent of her body.

Several people had seen Mr. Gaines in the vicinity of Ms. Davis's apartment during the late evening and early morning hours before the second fire broke out on June 22, 1996. Ms. Davis herself saw him there around 10:30 p.m. the night before the fire as she was preparing to go out for the evening. At around 4:00 a.m. on the morning of the fire, Robert Miller dropped Ms. Davis off at her apartment and saw Mr. Gaines standing near the manager's building at the Imperial Homes complex.

Darren Foster also saw Mr. Gaines at the Imperial Homes complex that evening. Mr. Foster was returning home from work at 11:00 p.m. when he first saw Mr. Gaines at the complex. About one hour later, Mr. Foster was on his way to his cousin's apartment in the Housing Authority project when he encountered Mr. Gaines again. At Mr. Gaines's request, Mr. Foster walked back to the complex with him, where Mr. Gaines knocked on the door of a downstairs apartment that was directly underneath Ms. Davis's apartment. Despite Mr. Gaines's statement that a girl named Sharon lived there, Mr. Foster knew the downstairs apartment was vacant. As they walked away, Mr. Gaines looked up at the upstairs apartments in the unit where Ms. Davis lived. The two men then returned to the project and smoked some marijuana. Mr. Gaines asked Mr. Foster once more to return with him to the complex where Mr. Gaines knocked a second time on the same downstairs apartment door and looked up again at the same upstairs apartments. Mr. Foster eventually parted company with Mr. Gaines at 2:00 a.m. on June 22.

Cornelius Franklin saw Mr. Gaines during the early morning hours of June 22 when he made several trips to see Mr. Gaines about purchasing some crack cocaine. During one of those trips, Mr. Franklin heard Mr. Gaines say that he was going "to get that bitch, Brenda Davis, and fuck her up." When Mr. Franklin went back to see Mr. Gaines for the third time that evening, he asked to purchase the drugs "on credit." According to Mr. Franklin, Mr. Gaines responded with an offer to give him some dope if Mr. Franklin would go to the store, purchase a dollar's worth of gas, and bring it back to Mr. Gaines. Mr. Franklin accepted the offer and delivered a dollar's worth of gas to Mr. Gaines. In return, Mr. Gaines gave Mr. Franklin a $20 rock of crack cocaine. Mr. Franklin's testimony was corroborated by Linda Green, the mother of one of the victims, who testified that she saw Cornelius Franklin carrying a container of gasoline at approximately 3:00 a.m. on the morning of the fire. Likewise, James Clark testified that between 3:00 a.m. and 4:00 a.m. on the morning of the fire, he saw Mr. Franklin hand Mr. Gaines a container of gasoline, and that ten minutes later the Imperial Homes complex was on fire.

On the morning after the fire, Mr. Gaines checked into a room at a motel and asked to talk with a former girlfriend, Evelyn Simms. He asked her for a telephone book so that he could find the

number for the bus station. He also told her that "he had did [*sic*] something that he knew he was going to have to pay for." When she asked him if it had anything to do with the children who died in the fire, he merely repeated the following statement seven or eight times: "I've made a mistake and I know I've got to pay for it." According to Ms. Simms, her romantic relationship with Mr. Gaines ended in 1995 because he was "too possessive." Another witness, Vanessa Ann Richmond, testified that she overheard Mr. Gaines say he had "thrown the fire" in the wrong apartment.

A certified fire investigator confirmed that the fire was started in the stairwell outside the apartments with a liquid accelerant that had been ignited by an open flame, such as a match or cigarette lighter. After Patrice Hardin opened the door to her apartment, the fire matriculated upward toward that apartment and the new source of oxygen. The medical examiner concluded that all three children died from smoke and soot inhalation.

Andra Gaines was found guilty by a jury of three counts of capital murder and one count of first-degree battery. He was sentenced by the trial court to serve three terms of life imprisonment without parole in the Department of Correction, to run concurrently with a twenty-year term on the battery charge. Mr. Gaines now appeals those convictions.

The seven points for reversal raised by Mr. Gaines involve evidentiary rulings by the trial court. On appeal, we will not reverse a trial court's ruling on the admission of evidence absent an abuse of discretion; nor will we reverse absent a showing of prejudice. *Huddleston v. State*, 339 Ark. 266, 5 S.W.3d 46 (1999); *Misskelley v. State*, 323 Ark. 449, 915 S.W.2d 702 (1996).

*I. Evidence of an Earlier Fire*

For his first point on appeal, Mr. Gaines argues that the trial court abused its discretion in allowing evidence of the June 9, 1996 fire and Ms. Davis's testimony that Mr. Gaines told her "the fire should have came [*sic*] down a little further," presumably to her apartment. The State contends that Mr. Gaines's motion in limine only sought to exclude evidence of the fire itself, and that any objection to testimony about his subsequent statement is not preserved for appellate review.

■ We will not consider an argument raised for the first time on appeal. *McDole v. State*, 339 Ark. 391, 6 S.W.3d 74 (1999); *McGhee v. State*, 330 Ark. 38, 954 S.W.2d 206 (1997). To preserve an argument for appeal, there must be an objection in the trial court that is sufficient to apprise the court of the particular error alleged. *Love v. State*, 324 Ark. 526, 922 S.W.2d 701 (1996). A party cannot change the grounds for an objection or motion on appeal, but is bound by the scope and nature of the arguments made at trial. *Henderson v. State*, 329 Ark. 526, 953 S.W.2d 26 (1997).

■ Prior to trial, Mr. Gaines moved in limine to exclude all evidence concerning the earlier fire that occurred on June 9, 1996. Such evidence would necessarily encompass Mr. Gaines's remarks to Ms. Davis about the fire. The admissibility of that evidence, including Mr. Gaines's subsequent statement, is therefore preserved for appellate review.

■ Mr. Gaines's first challenge to the admissibility of evidence about the earlier fire is on grounds of relevancy. Arkansas Rule of Evidence 401 defines relevant evidence as:

> . . . evidence having any tendency to make the existence of fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

Pursuant to Ark. R. Evid. 402, all relevant evidence is admissible, except as otherwise provided by statute or rule, and evidence which is not relevant is not admissible.

■■ The charges of capital murder in this case included not only felony murder, but also an allegation that Mr. Gaines caused the deaths of the unintended victims while acting with the premeditated and deliberate purpose of causing the death of Ms. Davis. *See* Ark. Code Ann. § 5-10-101(4) (Repl. 1997). Thus, evidence having any tendency to establish Mr. Gaines's intent toward Ms. Davis would be pertinent to the premeditation element of the State's alternative capital murder charge. There was evidence of domestic violence in Mr. Gaines's relationship with Ms. Davis before the June 9 fire. An order of protection had been issued in May 1996 based upon Ms. Davis's allegations that she had been beaten by Mr. Gaines. Moreover, he had been shot in the legs by Ms. Davis's brother. Under these circumstances, Mr. Gaines's remark to Ms. Davis that the first fire should have reached her apartment was

relevant in establishing his intent toward her. With regard to the fire itself, the State did not attempt to establish that Mr. Gaines committed any crime in connection with the first fire. However, evidence of that earlier fire was also relevant in that it provided the necessary context for Ms. Davis's testimony regarding the statement Mr. Gaines made to her about the fire on June 9, 1996.

■ Mr. Gaines also challenges the admissibility of this evidence under Ark. R. Evid. 404(b), which states:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of the person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Evidence offered under Rule 404(b) must be independently relevant, thus having a tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. *McGehee v. State*, 338 Ark. 152, 992 S.W.2d 110 (1999). The admission or rejection of evidence under Rule 404(b) is committed to the sound discretion of the trial court, and this court will not reverse absent a showing of manifest abuse. *Echols v. State*, 326 Ark. 917, 936 S.W.2d 509 (1996).

■■ As previously stated, the State did not attempt to establish that Mr. Gaines committed any crime in connection with the June 9, 1996 fire. In any event, evidence that the first fire occurred was independently relevant under Rule 404(b). The first fire was a catalyst for Mr. Gaines's statement that the fire should have "came [*sic*] down a little further" to reach Ms. Davis's apartment, suggesting his desire that she be harmed. Where the purpose of evidence is to disclose a motive for a killing or attempted killing, anything that might have influenced the commission of the act may be shown. *McGhee v. State, supra*. Evidence of circumstances that explain the act, show a motive, or illustrate the accused's state of mind, may be independently relevant and admissible. *Lee v. State*, 327 Ark. 692, 942 S.W.2d 231 (1997). In this case, the first fire might have given Mr. Gaines the idea to harm Ms. Davis by means of fire. Thus, evidence about the earlier fire was not prohibited by Rule 404(b).

■ ■ Finally, Mr. Gaines asserts that the evidence should have been excluded as unduly prejudicial. Rule 403 of the Arkansas Rules of Evidence states:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading of the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

The trial court has the discretion to determine whether the prejudicial value of the evidence substantially outweighs its probative value, and its judgment will be upheld absent a manifest abuse of discretion. *Parker v. State*, 333 Ark. 137, 968 S.W.2d 592 (1998). Ms. Davis's testimony regarding the statement Mr. Gaines made to her as well as evidence about the earlier fire, which provided a context for that statement, were probative of his intent and of a possible plan or scheme. We cannot say that the trial court abused its discretion in ruling that the probative value of that evidence was not substantially outweighed by the danger of unfair prejudice. We affirm on this point.

## II. Evidence of Drug Use and Drug Dealing

Mr. Gaines next argues that the trial court abused its discretion when it denied his motion in limine to exclude testimony that he smoked marijuana and sold crack cocaine on the evening of the fire. Specifically, Mr. Gaines asserts that this evidence was not relevant and, alternatively, that any relevance was outweighed by the danger of unfair prejudice. He also contends that Rule 404(b) prohibits proof of other crimes such as drug use and drug dealing.

■ ■ The State again argues that Mr. Gaines has not preserved an argument based on Rule 404(b) because his objections below were premised solely on the admissibility of the evidence under Rules 402 and 403. We disagree. The specific ground of an objection must be stated if the specific ground was not apparent from the context. Ark. R. Evid. 103. While Mr. Gaines's objection was predicated on the assertion that evidence of the drug use and drug dealing would be more prejudicial than probative, he also argued that the admission of such evidence would require him to defend himself against uncharged crimes. Accordingly, we cannot

say that an argument based on Rule 404(b) was not apparent from the context.

 With regard to the merits of Mr. Gaines's rule 404(b) argument, the general rule is that evidence of other crimes by the accused, not charged in the indictment or information and not a part of the same transaction, is not admissible at the trial of the accused; however, evidence of other crimes is admissible under the *res gestae* exception to the general rule to establish the facts and circumstances surrounding the alleged commission of the offense. *Haynes v. State*, 309 Ark. 583, 832 S.W.2d 479 (1992); *Young v. State*, 269 Ark. 12, 598 S.W.2d 74 (1980). Under the *res gestae* exception, the State is entitled to introduce evidence showing all circumstances which explain the charged act, show a motive for acting, or illustrate the accused's state of mind if other criminal offenses are brought to light. *Haynes v. State, supra.* Specifically, all of the circumstances connected with a particular crime may be shown to put the jury in possession of the entire transaction. *Haynes v. State, supra.* Where separate incidents comprise one continuing criminal episode or an overall criminal transaction, or are intermingled with the crime actually charged, the evidence is admissible. *See Ruiz & Van Denton v. State*, 265 Ark. 875, 582 S.W.2d 915 (1989); *Thomas v. State*, 273 Ark. 50, 615 S.W.2d 361 (1981); *Henderson v. State*, 284 Ark. 493, 684 S.W.2d 231 (1985). *Res gestae* testimony and evidence is presumptively admissible. *Henderson, supra; Lair v. State*, 283 Ark. 237, 675 S.W.2d 361 (1984); *Love v. State*, 281 Ark. 379, 664 S.W.2d 457 (1984); *Hobbs v. State*, 277 Ark. 271, 641 S.W.2d 9 (1982).

 Darren Foster testified that he and Mr. Gaines smoked marijuana after midnight on the morning of the fire as they went back and forth between the Imperial Homes complex and the West Memphis Housing Authority project. It was during this time that Mr. Gaines repeatedly returned to the area where the intended victim's apartment was located. Cornelius Franklin testified that he contacted Mr. Gaines that same night to "buy some dope from him." His drug purchases from Mr. Gaines that evening eventually led to Mr. Gaines making an offer to give Mr. Franklin some dope in exchange for one dollar's worth of gas. Within a short time after that transaction, the fire broke out. The evidence of drug use and drug dealing was clearly intermingled and contemporaneous with the arson, culminating in the commission of the crimes charged. As

such, it was part of the *res gestae* and admissible as an exception to Rule 404(b). Furthermore, we cannot say that the probative value of this evidence was outweighed by the danger of unfair prejudice. Accordingly, we affirm on this point.

## III. Evidence of An Order Of Protection

Mr. Gaines also challenges the trial court's admission of an *ex parte* order of protection entered against Mr. Gaines on May 15, 1996. Specifically, he contends that the protection order should have been excluded under Rule 404(b).

As previously stated, Mr. Gaines's intent toward Ms. Davis was relevant to the premeditation element of the State's alternative capital murder charge. Intent or state of mind is seldom capable of proof by direct evidence and must usually be inferred from the circumstances surrounding the killing. *Starling v. State*, 301 Ark. 603, 786 S.W.2d 114 (1990); *Parker v. State*, 290 Ark. 158, 717 S.W.2d 800 (1986). Threats made by a defendant prior to the time a homicide occurred are admissible to establish motive and ill will, even where they are never communicated to the victim. *Starling, supra; Pitts v. State*, 273 Ark. 220, 527 S.W.2d 849 (1981); *Lang v. State*, 258 Ark. 504, 527 S.W.2d 900 (1975).

The State argued below that Mr. Gaines was attempting to kill Brenda Davis when he accidentally killed the children. She testified that she sought a protection order because Mr. Gaines had threatened to kill her and had beaten her. In *Starling v. State, supra*, we upheld the admission of testimony that the defendant had previously used physical force against the victim, and had recently threatened to kill her. We held that such evidence "clearly tended to show appellant's motive, intent or plan to kill his wife." *Id*. Likewise, Ms. Davis's testimony in this case about earlier threats and beatings by Mr. Gaines was certainly probative of his motive, intent, or plan to harm her. This evidence was admissible regardless of whether she had sought or obtained a protection order. Evidence of the order itself was merely cumulative because the protection order was based upon admissible evidence of prior threats and beatings. With regard to Mr. Gaines's complaint that the protection order was issued in an *ex parte* proceeding, we note that he failed to request a curative instruction that would have explained the difference

between *ex parte* and adversarial proceedings. Under these circumstances, we conclude that the admission of an *ex parte* order of protection was not an abuse of the trial court's discretion.

### IV. Prior Consistent Statement By Cornelius Franklin

Mr. Gaines next argues that the trial court abused its discretion in allowing Essie Franklin to testify about statements made to her by her son, Cornelius Franklin. Specifically, he contends that such testimony was inadmissible hearsay.

■ Arkansas Rule of Evidence 801(d) provides in relevant part that:

(d) A statement is not hearsay if:

(1) *Prior Statement By Witness.* The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . .

(ii) consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive.

When there is an express or implied charge that a witness has fabricated a statement that he is now making under oath, it is then proper, and not hearsay, to show that he made the same statement before the motive for fabrication came into existence. *Henderson v. State*, 311 Ark. 398, 844 S.W.2d 360 (1993).

■ The defense cross-examined Cornelius Franklin extensively about a possible deal with the prosecution in return for his testimony concerning Mr. Gaines's actions on June 22, 1996. In its effort to establish that Mr. Franklin's testimony was motivated by a deal, or his desire for a deal, with the prosecution, the defense also called Mr. Franklin's attorney, Tom Montgomery, to testify as a witness. Both Mr. Franklin and his attorney denied that he had been promised anything in return for his testimony. Mr. Gaines was clearly challenging Mr. Franklin's testimony as being recently fabricated or improperly influenced or motivated by desires for a deal with the prosecution. On direct examination by the State, Ms. Franklin testified that her son made the following statement to her before he ever spoke to the police officers: "He told me that Andra

had sent him to get some gas. He went, got the gas, brought it back to him; and he left." Mr. Franklin's statement to his mother was consistent with his testimony at trial and was made before he had contact with the police or the prosecutors. It was admissible under Rule 801(d)(1)(ii) to rebut the implied charges of recent fabrication or improper influence or motive. We cannot say that the trial court abused its discretion in allowing this testimony by Ms. Franklin.

## V. Denial of Mistrial

Mr. Gaines also challenges the trial court's failure to grant a mistrial on grounds that Ms. Franklin blurted out that her son, Cornelius, told her shortly after the fire that Mr. Gaines started it. Mr. Gaines contends that this was inadmissible hearsay.

A mistrial is a drastic remedy and should be declared only when there has been an error so prejudicial that justice cannot be served by continuing the trial, or when the fundamental fairness of the trial itself has been manifestly affected. *Ward v. State*, 338 Ark. 619, 1 S.W.3d 1 (1999); *McFarland v. State*, 337 Ark. 386, 989 S.W.2d 899 (1999); *Barr v. State*, 336 Ark. 220, 984 S.W.2d 792 *cert. denied*, 120 S.Ct. 334 (1999). The trial court has wide discretion in granting or denying a motion for a mistrial, and absent an abuse of that discretion, the trial court's decision will not be disturbed on appeal. *Ward, supra.*

The damaging testimony that prompted a motion for mistrial was Ms. Franklin's statement that her son Cornelius told her "Andra had killed Linda Green's kids." Cornelius Franklin had previously testified, without objection, that he told his mother that "Andra had killed some kids." We have repeatedly held that prejudice is not presumed and we will not reverse the trial court's ruling absent a showing of prejudice. *Windsor v. State*, 338 Ark. 649, 1 S.W.3d 20 (1999); *Clark v. State*, 323 Ark. 211, 913 S.W.2d 297 (1996). No prejudice results where the evidence erroneously admitted was merely cumulative, and we do not reverse for harmless error in the admission of evidence. *See Thompson v. Perkins*, 322 Ark. 720, 911 S.W.2d 582 (1995). Even if this testimony by Ms. Franklin was erroneously admitted, no prejudice resulted as it was merely cumulative evidence. Accordingly, we affirm the trial court on this point.

### VI. Testimony by Evelyn Simms

In his sixth point on appeal, Mr. Gaines asserts that the trial court erred in allowing Evelyn Simms to testify about statements made by Mr. Gaines the day after the fire. He contends that her testimony was not relevant, did not amount to an admission against interest, and was unfairly prejudicial.

■ The State suggests that Mr. Gaines abandoned any objection to Ms. Simms's testimony, with the exception of her testimony about Mr. Gaines being possessive, when his attorney made the following remark at trial:

> DEFENSE COUNSEL: I don't mean that her whole testimony should be precluded. I think either reference to the statements that he was possessive which caused their breakup is the specific portions of her testimony that we object to.

The State nonetheless acknowledges that Mr. Gaines never specifically disavowed any portion of his motion to exclude Ms. Simms's testimony. Based on this record, we cannot say that Mr. Gaines abandoned any portion of his arguments on the admissibility of Ms. Simms's testimony.

■ ■ As previously stated, Ms. Simms testified that Mr. Gaines checked into the motel where she worked and asked her for a telephone book to locate the number for the bus station. During this conversation, he also told her that "he had did [*sic*] something that he knew he was going to have to pay for." When she asked him if it had anything to do with the children who died in the fire, he repeated the following statement several times: "I've made a mistake and I know I've got to pay for it." Mr. Gaines now claims that he never specifically told Ms. Simms that his "mistake" had something to do with the fire, and that he could have been referring to some other mistake. Such a claim concerning how a defendant's statement should be interpreted does not go to the admissibility of the statement, but only to its weight, which lies within the province of the jury. *See Webb v. State*, 327 Ark. 51, 938 S.W.2d 806 (1997); *Slocum v. State*, 325 Ark. 38, 924 S.W.2d 237 (1996). A party's own statement that is offered against him is clearly admissible under Ark. R. Evid. 801(d)(2). In considering the evidence as a whole, the jury could have reasonably inferred that Mr. Gaines was referring to the fire and the deaths of the unintended victims when he made the

statements to Ms. Simms only hours after the fire. We conclude that the trial court did not abuse its discretion in allowing Ms. Simms's testimony.

## VII. Cumulative Error

 Mr. Gaines's final point on appeal is an assertion that his conviction should be reversed on the basis of cumulative error. We have considered all assertions of error and concluded that no reversible error occurred in Mr. Gaines's trial. This court does not recognize the cumulative error doctrine when there is no error to accumulate. *Nooner v. State*, 322 Ark. 87, 907 S.W.2d 677 (1995).

## VIII. Arkansas Supreme Court Rule 4-3(h)

The transcript of the record in this case has been reviewed in accordance with our Rule 4-3(h) which requires, in cases in which there is a sentence to life imprisonment or death, that we review all prejudicial errors in accordance with Ark. Code Ann. § 16-91-113(a). None have been found.

Affirmed.