

NUMBER 13-12-00044-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

NELSON DEJESUS HERNANDEZ,                                    Appellant,

v.

THE STATE OF TEXAS,                                                  Appellee.

**On appeal from the 253rd District Court
of Liberty County, Texas.**

# MEMORANDUM OPINION

**Before Justices Rodriguez, Garza,and Perkes
Memorandum Opinion by Justice Garza**

By one issue, appellant Nelson DeJesus Hernandez challenges his conviction of aggravated assault, a second-degree felony for which he was sentenced to seventeen years' imprisonment. *See* TEX. PENAL CODE ANN. § 22.02(a)(2) (West 2011). We affirm.

On May 14, 2010, police in Dayton, Liberty County, Texas, were dispatched to the residence of Wilhelmenia Howard in response to a report of a shooting. Howard was, at that time, senior warden of the nearby Plane Henley Jail complex. When police arrived at the scene, they found no one injured. However, three vehicles in the driveway of the residence had shattered windows and bullet holes, and there was shattered glass and bullet holes in the front of the house. Dozens of spent .40 and .45 caliber shell casings and bullet fragments were recovered, as was a sample of a small amount of blood found outside the house.

People standing outside the residence advised officers that the suspects in the shooting were "two males, possibly Hispanic" driving a "small blue passenger car." Police also interviewed Howard's sons, Kasey Young and Horatio Young, who were in the residence at the time of the shooting. Kasey advised police that the shooters were "two Hispanic males," one of whom is named "Henry" and the other whose face was covered by a bandana. Kasey also reported that the suspect wearing a bandana had used a gold-colored rifle.[2]

Edward Benoit, an assistant warden at the Plane Henley complex, testified that he heard shots fired from the direction of Howard's residence—which was only around 400 yards away from the jail complex—at around 5:00 p.m. When he heard the shots, he left the complex to see what had happened at Howard's house. On his way there,

---

[1] This appeal was transferred from the Ninth Court of Appeals to this Court pursuant to a docket equalization order issued by the Texas Supreme Court. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2005).

[2] Howard herself was present when police arrived at the scene but was not at her residence at the time of the shooting.

he saw a "dark colored, mid-size vehicle," similar to a Honda Accord, leave the residence's driveway and pick up speed. He did not see the occupants of the vehicle, and he did not pursue the vehicle.

William Morris, a correctional officer, was stationed at a watchtower on the Plane Henley complex when he heard the shots fired from the warden's house. Morris testified that, using binoculars, he observed two "white or Hispanic" individuals get into a car in the driveway and drive away from the house shortly after the shots were fired. He described the car as "dark colored, small, like a Cavalier or a Toyota."

Benjamin Luce, a Harris County Deputy Sheriff, testified that he received a dispatch directing law enforcement officers to be on the lookout for a blue four-door car occupied by two Hispanic males. At around 6:00 p.m., he observed a vehicle matching that description and he pursued the vehicle at high speed until the suspect vehicle crashed into "two large rocks in somebody's yard." Deputy Luce identified appellant as the driver of the vehicle. According to Deputy Luce, there was a "gold-plated Thompson .45 rifle" in appellant's lap and a Colt revolver on the floor of the vehicle near appellant's feet. Appellant was wearing gloves that covered his fingers, despite the fact that it was not cold outside at the time. The passenger in the vehicle was identified as Henry Hernandez, appellant's brother. Another passenger, a white male identified as Larry Galloway, was sitting in the back seat. An in-car video recording of Deputy Luce's pursuit and its aftermath was introduced into evidence and played for the jury.

Another Harris County Deputy Sheriff, Moses DeArcos, was involved in the high speed pursuit. He testified that he was the first officer to approach the driver's side door of the suspect vehicle, and that when he did so, he observed appellant holding the rifle under his chin and "trying to rack a round in it." Believing that appellant was about to

3

commit suicide, Deputy DeArcos grabbed the rifle and pulled it away.

Kasey Young testified that, at around 5:30 p.m. on the day in question, Henry Hernandez walked up to the front door of the house and told Kasey to come outside. Kasey knew Henry because they had gone to high school together. When Kasey refused to go outside, Henry "punched . . . out" the glass of the front door. Kasey testified that he then saw another man—who was "kind of heavy," possibly Hispanic, and had his face covered with a bandana—behind Henry holding a rifle. Kasey closed the door and ran back into the house, pushing his brother, Horatio, back into the house as well. As Kasey hid in the kitchen, he heard gunfire coming from outside the house. Later, Kasey could see through blinds in the kitchen that the assailants had left in their car.

Horatio Young testified that he heard the doorbell ring and that Kasey was arguing with someone at the door. When the argument stopped, "[o]ne guy ran up with a gun and started shooting." Horatio described the weapon as a "gold-plated" assault rifle.

Larry Galloway testified that he, appellant, and Henry were hanging out in a trailer park on May 14, 2010, when appellant said he wanted to "collect on a debt from a friend or something, [an] acquaintance they had." He, appellant, and Henry got into a blue Chevrolet Cavalier and travelled to Dayton. When they arrived at their destination, Henry got out of the car, walked up to the front door of the house, and asked for someone to come outside. He then heard a window shatter and saw Henry return to the car bleeding from his hand. Galloway then began shooting at the top of the house with a pistol. He could not see what appellant was doing, but he heard other gunshots and knew that appellant was the only other person in the group that was armed. The

4

three men got back into the Cavalier and fled. They were pursued by police and eventually arrested.

Forensic examination confirmed that the blood found at the crime scene matched the DNA profile of Henry Hernandez and that the spent shell casings found at the scene were fired from the gold-plated rifle found in appellant's hands when he was arrested.

Appellant was convicted of aggravated assault and sentenced to seventeen years' imprisonment. This appeal followed.

## II. DISCUSSION

By a single issue, appellant contends that the evidence was insufficient to support his conviction. In the argument section of his brief, appellant sets forth the law applicable to evidentiary sufficiency as well as the law applicable to corroboration of accomplice evidence. *See* TEX. CODE CRIM. PROC. ANN. art. 38.14 (West 2005). He then argues that the evidence was insufficient to support his conviction because, "eliminating from consideration the testimony of the accomplice witness, it cannot be concluded that the jury could have reasonably determined beyond a reasonable doubt" that Hernandez committed the charged offense.

This is an incorrect application of the law. A challenge of insufficient evidence to support a verdict is not the same as a challenge of insufficient corroboration of accomplice testimony, but is instead governed by a different test. *See Yost v. State*, 222 S.W.3d 865, 871–72 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd) (citing *Cathey v. State*, 992 S.W.2d 460, 462–63 (Tex. Crim. App. 1999) (en banc); *Torres v. State*, 137 S.W.3d 191, 196 (Tex. App.—Houston [1st Dist.] 2004, no pet.)). In a legal sufficiency review, we consider all the evidence, even uncorroborated accomplice testimony. *See id.* at 875. On the other hand, the evidence required to corroborate

5

accomplice testimony does not need to be in itself sufficient to establish guilt beyond a reasonable doubt, nor must it directly link the accused to the commission of the offense. *Patterson v. State*, 204 S.W.3d 852, 859 (Tex. App.—Corpus Christi 2006, pet. ref'd) (citing *Dowthitt v. State*, 931 S.W.2d 244, 249 (Tex. Crim. App. 1996); *Gill v. State*, 873 S.W.2d 45, 48 (Tex. Crim. App. 1994); *Munoz v. State*, 853 S.W.2d 558, 559 (Tex. Crim. App. 1993); *Cox v. State*, 830 S.W.2d 609, 611 (Tex. Crim. App. 1992)). Instead, accomplice testimony must merely be "corroborated by other evidence tending to connect the defendant with the offense committed . . . ." TEX. CODE CRIM. PROC. ANN. art. 38.14.

Although appellant's brief incorrectly applies the law, it does correctly set forth the law applicable to both evidentiary sufficiency and corroboration of accomplice testimony. Accordingly, we will address both issues.

## A. Corroboration of Accomplice Testimony

Under article 38.14 of the code of criminal procedure, "[a] conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed. . . ." *Id.*; *Smith v. State*, 332 S.W.3d 425, 439 (Tex. Crim. App. 2011) (quoting *Blake v. State*, 971 S.W.2d 451, 454 (Tex. Crim. App. 1998)) ("The Legislature has determined that the factfinder should exercise caution when considering the testimony of an accomplice" because "'accomplices often have incentives to lie, such as to avoid punishment or shift blame to another person.'").[3] "[C]orroboration is not sufficient if it merely shows the commission

---

[3] An accomplice is a person who participates with a defendant before, during, or after the commission of a crime and acts with the required culpable mental state. *Patterson v. State*, 204 S.W.3d 852, 858 (Tex. App.—Corpus Christi 2006, pet. ref'd) (citing *Kutzner v. State*, 994 S.W.2d 180, 187 (Tex. Crim. App. 1999)). It is undisputed that Galloway was an accomplice of appellant.

of the offense," *id.*, but even apparently insignificant incriminating circumstances may sometimes afford satisfactory evidence of corroboration. *McAfee v. State*, 204 S.W.3d 868, 871 (Tex. App.—Corpus Christi 2006, pet. ref'd) (citing *Dowthitt*, 931 S.W.2d at 249; *Munoz*, 853 S.W.2d at 559). The absence of "smoking gun" evidence does not invalidate evidence that does connect the defendant to the offense. *Id.* (citing *Treviño v. State*, 991 S.W.2d 849, 852 (Tex. Crim. App. 1999)).

The only accomplice of appellant to testify at trial was Galloway. Excluding Galloway's testimony, the corroborating evidence included the following: the testimony of Kasey and Horatio Young that a man meeting appellant's description opened fire with a rifle at their house; the testimony of Benoit and Morris that a small dark-colored vehicle departed the scene shortly after they heard shots fired; Deputy Luce's testimony that he pursued a small blue four-door car, that appellant was driving the vehicle, that appellant had a gold-plated .45 caliber rifle in his lap and a revolver at his feet, and that appellant was wearing gloves even though it was not cold outside; and the forensic evidence which established that the spent shell casings found at the scene were fired from the same gold-plated rifle recovered from appellant. All of this evidence tended to connect appellant to the offense. Therefore, Galloway's testimony was sufficiently corroborated. *See* TEX. CODE CRIM. PROC. ANN. art. 38.14.

**B. Evidentiary Sufficiency**

In reviewing evidence for legal sufficiency, we consider the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality op.) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). We give deference to "the responsibility of the trier of fact to

fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19). When faced with conflicting evidence, we presume that the trier of fact resolved any such conflict in favor of the prosecution, and we defer to that resolution. *State v. Turro*, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993).

Sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Id.* Here, a hypothetically correct jury charge would state that appellant is guilty of aggravated assault as alleged in the indictment if he (1) intentionally or knowingly threatened Kasey Young with imminent bodily injury and (2) used or exhibited a deadly weapon. *See* TEX. PENAL CODE ANN. § 22.01(a)(2) (West 2011); *id.* § 22.02(a)(2).

The jury was instructed on the law of parties, which states that a person is criminally responsible for an offense committed by the conduct of another if, "acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." *Id.* § 7.02(a)(2) (West 2011). When we review the sufficiency of the evidence supporting a defendant's participation as a party to the crime, "we may consider 'events occurring before, during and after the commission of the offense, and may rely on actions of the defendant which show an understanding and common design to do the prohibited act.'" *King v. State*, 29

8

S.W.3d 556, 564 (Tex. Crim. App. 2000) (quoting *Ransom v. State*, 920 S.W.2d 288, 302 (Tex. Crim. App. 1994)).

As noted above, the evidence supporting appellant's conviction included testimony that a man meeting appellant's description opened fire with a gold-plated rifle at Howard's house, that appellant had a gold-plated rifle in his lap at the time he was apprehended by police, and that spent shell casings found at the scene were from that rifle. The evidence before the jury also included Galloway's testimony that he traveled with appellant to Dayton in order to "collect on a debt" and that, though he did not see appellant fire his rifle at the house, he heard gunshots and knew that appellant was the only other person in his group that had a firearm. This evidence allowed a reasonable trier of fact to find that appellant, as a principal or as a party, intentionally or knowingly threatened Kasey Young with imminent bodily injury while using or exhibiting a deadly weapon. *See* TEX. PENAL CODE ANN. §§ 22.01(a)(2), 22.02(a)(2). The evidence was therefore sufficient to support appellant's conviction. *See Brooks*, 323 S.W.3d at 895.

Having found sufficient evidence to corroborate the accomplice testimony and to support appellant's conviction, we overrule appellant's sole issue.

### III. CONCLUSION

The judgment of the trial court is affirmed.

_____
DORI CONTRERAS GARZA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).
Delivered and filed the
9th day of May, 2013.

9