

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CR–15–1073

| | | |
|---|---|---|
| | | Opinion Delivered: **SEPTEMBER 7, 2016** |
| RICKEY NEAL | APPELLANT | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, FIRST DIVISION [NO. 60CR-13-230] |
| V. | | |
| | | HONORABLE LEON JOHNSON, JUDGE |
| STATE OF ARKANSAS | APPELLEE | AFFIRMED |

### KENNETH S. HIXSON, Judge

Appellant Rickey Neal appeals after he was convicted by a Pulaski County jury of domestic battering in the second degree, theft of property, and fleeing and was sentenced to serve a total of 300 months in the Arkansas Department of Correction. On appeal, appellant contends (1) that the trial court erred when it denied his motion for directed verdict and (2) that the trial court abused its discretion when it denied his motion for mistrial. We affirm.

Appellant was charged by information with aggravated robbery, domestic battering in the second degree, theft of property, terroristic threatening in the first degree, and fleeing. At trial, Officer Stan Wilhite testified that he was dispatched to the residence of the victim, Betty Frazier, on the evening of December 2, 2012. During his walk-through of the residence, the officer observed several items in disarray and some furniture turned over, which indicated to him that there had been some sort of an altercation. He observed several

apparent blood stains at the scene, and he took samples of fresh blood that were found at Ms. Frazier's home and at a store across the street.[1]  The officer testified that he took several photographs at the scene.  Afterwards, the officer went to the hospital to meet with the victim, Ms. Frazier.  Ms. Frazier had already received medical treatment and had bandages covering parts of her face.  The officer took photographs of Ms. Frazier.

Ms. Frazier testified that she was sixty-five years old at the time of the altercation. She explained that she had been romantically involved with appellant, that they were living together, and that he knew her age.  She was the owner of a black 2010 Ford Edge. Ms. Frazier testified that on the night of December 2, 2012, appellant became upset with her in the bedroom after she told him that she would not marry him.  She testified that he subsequently struck her with her pistol that he had taken out of her dresser drawer.  After the appellant had struck her with the pistol, she explained that she fell against the closet door and "passed out."  When she came to, appellant had lifted her up by her pockets and was trying to find her car keys.  After he found them, she asked to go to the bathroom because there was blood on her face and in her eyes.  Ms. Frazier indicated that the appellant followed her throughout several rooms of the home and continued to "terrorize" her.  At one point, the appellant told her that he would kill her and then kill himself.  In the main room of the residence, appellant took a hardened seashell and struck her in the forehead. Ms. Frazier finally was able to get out of the home by shoving appellant over a chair, and she fled to a tobacco store located across the street.  Ms. Frazier testified that she collapsed

---

[1] Ms. Frazier later testified that after the altercation, she ran across the street to a tobacco store.

SLIP OPINION

at the store and was subsequently transported to the hospital by ambulance. After her release from the hospital, Ms. Frazier discovered that she was missing jewelry and that her Ford Edge was missing. Ms. Frazier testified that appellant did not have permission to take her jewelry or her car that night. Throughout her testimony, the prosecutor showed Ms. Frazier photographs of the scene as she described the chain of events, and she indicated that it was her blood depicted in the photographs.

Dr. David Edrington testified that he was Ms. Frazier's treating physician in the emergency room. He explained that she suffered from a scalp laceration that was ten centimeters in length on the crown of her scalp; multiple contusions, bruising, and swelling, predominantly around her left orbital area; and one lost tooth. After using staples to close the laceration, Dr. Edrington chose to admit her into the hospital for further observation.

Lieutenant Barry Brewer testified that he was the shift commander on duty the night of the altercation. He explained that he observed the appellant operating a black Ford Edge and activated his blue lights in an attempt to stop the vehicle. However, the vehicle did not stop; instead, the appellant led law enforcement officers on a high-speed pursuit lasting approximately sixteen minutes, with appellant traveling up to 132 miles per hour at one point. Eventually, law enforcement deployed spike strips to stop appellant's vehicle, and the appellant was apprehended.

Officer Nick Kinsey testified that he assisted in the pursuit of the appellant. Kinsey testified that after the appellant had been apprehended, although he observed some blood on appellant's clothing, he did not observe any injuries on appellant. Crime Specialist Rachel Carver and Detective Reagan Hilgeman testified that they searched the black Ford

Edge operated by the appellant after appellant's arrest. They discovered jewelry and what appeared to be blood in the vehicle.

Detective Brad Silas testified that he took photographs of appellant in an interview room after he had been arrested. The detective noticed that appellant had blood on his clothing and a small scratch on his hand and chest. However, appellant did not complain of any injuries at the time, and none of the injuries were bleeding at that time. Additionally, appellant did not exhibit any signs of intoxication.

Appellant's testimony at trial painted a very different version of events. The appellant openly admitted to the jury that he was guilty of fleeing and that he had been previously convicted of second-degree battery, theft by receiving, aggravated assault on a family or household member, and terroristic threatening. He explained that on the night of the incident he had been out drinking with friends while Ms. Frazier stayed home. The appellant admitted that he was drunk. When he returned home, the appellant found Ms. Frazier lying in bed drinking wine. He testified that he went downstairs to eat, drink some more alcohol, and smoke cigarettes. At some point thereafter, the appellant stated that he returned to the bedroom and went to sleep. The appellant explained that he woke up after he had been hit across his chest, and he discovered that his hands had been tied with two neckties. The lights were off in the home. He further testified that the person continued to hit him, hitting him on his head, crushing the knuckles of his hand, and stabbing his big toe with a pocketknife. He managed to get himself loose and fought with the person around the house. It was only after the appellant had turned the lights on that he realized that he had been fighting with Ms. Frazier and that it was Ms. Frazier lying on

the floor.  The appellant indicated that he tried to help Ms. Frazier and wanted to take her to the hospital.  However, Ms. Frazier threw a towel at him and left.  The appellant denied that there was any argument about marriage.  He further denied hitting Ms. Frazier with a gun or seashell and stated that he instead hit her with a flashlight in the bedroom only because he did not know that it was Ms. Frazier.  After Ms. Frazier left, the appellant explained that he left in the Ford Edge because he was afraid that the police would take him back to prison since he was already on parole.  Finally, he denied taking any jewelry from Ms. Frazier and explained that the jewelry that was found in the Ford Edge had already been in the vehicle.

The jury found appellant not guilty of aggravated robbery, and the jury was unable to reach a decision for terroristic threatening in the first degree.  However, the jury did find appellant guilty of domestic battering in the second degree, theft of property, and fleeing. The appellant was sentenced to serve 300 months for domestic battering in the second degree, 12 months for theft of property, and 180 months for fleeing in the Arkansas Department of Correction, to be served concurrently.  This appeal followed.[2]

Appellant first alleges that the trial court erred in denying his motion for directed verdict.  Specifically, he argues that the jury lacked substantial evidence to convict him of domestic battering in the second degree because the victim's version of events was unlikely based on the evidence of appellant's physical condition.  Instead, he argues that the evidence was clear that the victim was the initial aggressor.  We disagree.

---

[2] Appellant did not appeal his convictions for theft of property and fleeing.

A motion for a directed verdict is a challenge to the sufficiency of the evidence. *Wyles v. State*, 368 Ark. 646, 249 S.W.3d 782 (2007). On an appeal from a denial of a motion for a directed verdict, the sufficiency of the evidence is tested to determine whether the verdict is supported by substantial evidence, direct or circumstantial. *Id.* In determining whether there is substantial evidence to support the verdict, this court reviews the evidence in the light most favorable to the State and considers only that evidence which supports the verdict. *Id.* Substantial evidence is that evidence which is of sufficient force and character to compel a conclusion one way or the other beyond suspicion or conjecture. *Id.*

It is well settled that the credibility of witnesses is an issue for the jury and not this court. *Airsman v. State*, 2014 Ark. 500, 451 S.W.3d 565. Furthermore, the jury is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. *Id.* In doing so, the jury may choose to believe the State's account of the facts rather than the defendant's. *Id.* Additionally, the jury is not required to set aside common sense and need not view each fact in isolation, but it may instead consider the evidence as a whole. *Lewis v. State*, 2014 Ark. App. 730, 451 S.W.3d 591.

In relevant part, "a person commits domestic battering in the second degree if . . . [t]he person knowingly causes physical injury to a family or household member he or she knows to be sixty (60) years of age or older or twelve (12) years of age or younger." Ark. Code Ann. § 5-26-304 (Repl. 2013). Here, Ms. Frazier testified that appellant was a household member living with her at the time, knew that she was sixty-five years old, and struck her on the head and face with a gun and seashell. Although appellant argues that the

evidence supported his version of events, the jury was free to believe Ms. Frazier's version of events in resolving the conflicting testimony. *See Airsman*, *supra*. Thus, there was substantial evidence to support appellant's convictions, and we affirm as to appellant's first point on appeal.

In appellant's second point on appeal, he alleges that the trial court abused its discretion when it denied his motion for mistrial. The appellant more specifically argues that he made two motions for mistrial that the trial court erred in denying. A mistrial is an extreme remedy that should not be declared unless there has been error so prejudicial that justice cannot be served by continuing the trial or when the fundamental fairness of the trial itself has been manifestly affected. *Britton v. State*, 2014 Ark. 192, 433 S.W.3d 856. Our supreme court has held that a cautionary instruction or admonition to the jury can make harmless any prejudice that might occur. *See Green v. State*, 2013 Ark. 497, 430 S.W.3d 729. A mistrial is proper only where an error is beyond repair and cannot be corrected by any curative relief. *McClinton v. State*, 2015 Ark. 245, 464 S.W.3d 913. The trial court has wide discretion in granting or denying a motion for mistrial and, absent an abuse of that discretion, the trial court's decision will not be disturbed on appeal. *Britton*, *supra*.

The first motion for mistrial raised in appellant's brief on appeal was made during closing arguments. In his closing statements, the prosecutor made the following comments to the jury:

> But then [defense] counsel said [in his closing statements], the injuries to Rickey Neal, those aren't in dispute. Well, I wholeheartedly disagree with him. I think those injuries very much are in dispute. He kept going on and on about the knuckles and how during all of this Ms. Frazier broke his knuckles and, look, no knuckles. But ladies and gentlemen, knuckles, no knuckles. Knuckles, no knuckles. And Ms. Frazier certainly didn't come up over here the five seconds I'm doing this

and break the knuckles on my hand.  You heard no medical doctor testify to the injuries that he observed.  You heard no medical doctor testify that this right here, the bone spur was the result of what happened or that the knot on his head was a result of what happened. And you didn't hear that testimony because Mr. Neal made all of that up.  He made up every single bit of the injuries to him, except for the injuries which you could see.  You could see the injuries, the - - the scrapes to his fingers - -

At that point, defense counsel made a motion for mistrial, arguing that the prosecutor had improperly shifted the burden of proof to the defendant.  The trial court agreed that the comments were improper but denied the motion for mistrial.  Instead, he admonished the jury to disregard the comment and instructed the jury that the defense did not bear the burden of proof.

Assuming arguendo that the prosecutor's statements were improper, the statements were not of such magnitude that we must find that the court abused its discretion in denying the motion.  Additionally, even where a remark is improper, the trial court may deny the mistrial motion and cure any prejudice by admonishing the jury to disregard the remark. *Williams v. State*, 2014 Ark. 253, 435 S.W.3d 483.  An admonition to the jury normally cures a prejudicial statement unless it is so patently inflammatory that justice could not be served by continuing the trial.  *Id*.  On this record, we conclude that any possible prejudice was cured by the trial court's admonition to the jury and that there was no abuse of discretion in denying appellant's motion for mistrial.

The second motion for mistrial raised in appellant's brief on appeal was made during the direct examination of the victim, Ms. Frazier.  Exhibits twenty-seven and twenty-eight were photographs taken at the hospital depicting the injuries to Ms. Frazier's face and had already been admitted into evidence and published to the jury through previous testimony.

When the prosecutor sought to show the photographs to Ms. Frazier, the prosecutor predicated his questions by stating, "Ms. Frazier, I'm showing you picture No. 27. And I apologize. These are some gruesome pictures." Appellant objected and argued that he was entitled to a mistrial because the prosecutor was testifying and that the statements were prejudicial. The prosecutor explained that the witness previously had a very emotional reaction to those photographs and that the purpose of the comment was to prepare her before showing her the photographs. The trial court denied appellant's motion for mistrial and did not provide any limiting instruction to the jury.

Counsel argues on appeal that appellant was prejudiced by the prosecutor's comment that the photographs were gruesome and that the trial court abused its discretion in denying his motion for mistrial. We disagree. The photographs shown to Ms. Frazier had already been introduced at trial and had been published to the jury, and the jury was able to evaluate the evidentiary value of the photographs on their own. Additionally, the trial court is in a better position to determine whether a remark prejudiced the jury. *See Green*, *supra*; *see also Burnett v. State*, 299 Ark. 553, 776 S.W.2d 327 (1989) (affirming a trial court's denial of a motion for mistrial after the prosecutor commented that the defendant "[h]elped her right into the morgue" during cross-examination after the defendant stated that he was trying to help the victim). Because appellant has failed to demonstrate that there was a reasonable probability of resulting prejudice here, we affirm the trial court's denial of mistrial as not manifesting an abuse of discretion.

Finally, to the extent that appellant argues that he was entitled to a mistrial based on the cumulative effect of the prosecutor's statements, we hold that his cumulative-error



argument is without merit. We do not "recognize the cumulative-error doctrine when there is no error to accumulate." *Green*, 2013 Ark. 497, at 34, 430 S.W.3d at 751 (quoting *Gaines v. State*, 340 Ark. 99, 8 S.W.3d 547 (2000)). Thus, we affirm.

Affirmed.

KINARD and WHITEAKER, JJ., agree.

*Willard Proctor, Jr., P.A.*, by: *Willard Proctor, Jr.*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Brad Newman*, Ass't Att'y Gen., for appellee.