Gregory BROWN, Appellant

v.

STATE of Arkansas, Appellee.

No. CA CR 10–623.

Court of Appeals of Arkansas.

Feb. 23, 2011.

William Robert Simpson, Little Rock, for appellant.

Mary Kathryn Williams, Kathryn Henry, Little Rock, for appellee.

CLIFF HOOFMAN, Judge.

Appellant Gregory Brown appeals both of his convictions in Pulaski County Case Nos. CR2008–2319 and CR2009–2424 for second-degree domestic battery, for which he was sentenced to three years' imprisonment for each conviction, with both sentences to run concurrently. Appellant now challenges the sufficiency of the evidence to support his convictions in both cases. In Case No. CR2008–2319, appellant argues that the State failed to prove that he did not act in self-defense, and, in Case No. CR2009–2424, he contends that the State failed to prove that the steel pipe allegedly used in the assault fit the definition of a deadly weapon under Ark.Code Ann. § 5–1–102(4) (Supp.2009). We affirm both convictions.

In Case No. CR2008–2319, Brown was charged with two counts of second-degree domestic battery. The two counts named Robert Brown and Michael Brown, appellant's brothers, as the victims. At the bench trial held on November 9, 2009, Robert Brown testified that on May 7, 2008, Robert and appellant were at a mutual acquaintance's home, which was across the street from the house where they lived with their mother. Robert testified that they were drinking and playing cards and that he and appellant got into a "scuffle" over the female acquaintance.

Robert stated that appellant hit him first and that at some point during the fight, appellant grabbed a "grass sickle" and hit him with it, cutting Robert right above his left eye. According to Robert, he did not have a gun at the time of the fight, but after appellant cut him with the sickle, he went to his house across the street to get a gun because he "was going to shoot [appellant] in the butt." Robert stated that the police arrived as he was coming out of the house with the gun and that he then fell off the porch and the gun fell onto the ground, where his brother, Michael retrieved it. Robert testified that he needed stitches for the cut above his eye.

Michael Brown testified that he lived a block down the street from Robert and appellant. He stated that on May 7, he walked down the street toward his brothers' house and saw Robert lying in the grass in the front yard, bleeding from a cut near his eye. Michael testified that he was trying to help Robert when he heard appellant come up behind him, carrying a sickle. According to Michael, appellant said, "I'll get you, too," and then appellant swung the sickle at Michael, who was cut on his hand as he tried to catch the blade. Michael further testified that the police drove by at this time and saw appellant with the sickle and then turned around. While he was waiting with Robert on the porch for the police to return, Michael stated that he saw the gun fall out of Robert's pocket and that he picked it up and started to put it back in the house but that the police then confiscated the gun. Michael testified that he went to the hospital and had his hand bandaged from the cut caused by the sickle.

According to the testimony of the police officers that arrived on the scene, they saw appellant walking down the street carrying a sickle and arrested him. Officer Sean Ragan testified that he also saw Robert attempt to walk into his house and that he then fell off the porch and a handgun fell out of his pants. Ragan stated that Michael picked up the gun and put it back in the house, where Ragan then recovered it. The officers testified that they did not notice any injuries to appellant from the fight.

In his testimony, appellant stated that he had been working, helping someone paint a house, and that he returned home to grab the sickle so that he could remove vines from the outside of the house they were painting. He testified that he went across the street to his friend's house while he was waiting on his ride back to work and that he and Robert got into a fight. Appellant stated that Robert hit him first and that they then wrestled in the yard. According to appellant, Robert obtained his injuries from falling into a fence after the fight, not from the sickle, which appellant testified he had left on the porch of his house while he waited on his ride. Appellant also testified that he did not hit Michael with the sickle, but rather that Michael must have cut himself with a razor blade that he was carrying in his hand.

After hearing the evidence, the trial court found appellant not guilty as to the first count of battery against Robert, stating that there was some proof of self-defense in that they were both intoxicated at the time and Robert had admitted that he was going to shoot appellant. The trial court found no rationale for striking Michael with the sickle and convicted appellant of the second count of domestic battery in the first degree.

On the same day, the trial court heard Case No. CR2009–2424, in which appellant was charged with one count of second-degree domestic battery against his brother, Michael, stemming from a separate incident. Michael testified that, on June 14,

2009, appellant's girlfriend was visiting at Michael's house and that when he left to go to the store, he walked down to appellant's house to let him know that she was staying at the house. According to Michael, appellant was already angry earlier that day due to the fact that his girlfriend was at Michael's home, and Michael wanted to be respectful and let him know that she was still there because he had asked her to watch the house while he was out. Michael testified that he knocked on appellant's door but no one answered, so he turned around to leave, and then appellant came up behind him and hit him twice on the back of the head with a long steel pipe. Michael stated that he was almost unconscious and that he staggered back to his house. Someone had called the police, and Michael stated that they had arrived at his house, along with an ambulance, by the time he walked down there. He testified that he went to the hospital and that his eye was swollen shut, and he had injuries to the back of his head.

Officer Cedric Roy testified that he responded to a disturbance call at appellant's address but that he first found Michael near his residence one block away with severe swelling to the right side of his face and a bleeding head injury. According to Roy's testimony, Michael told him that appellant had attacked him, and Roy then went to appellant's home. When Roy told appellant about Michael's allegation, appellant admitted that he "beat him up" because Michael was banging and kicking on the outside of his house. Appellant denied hitting Michael with a steel pipe, stating that he had only used his hands to beat him. Roy testified that he asked appellant if he minded if he searched the residence and that appellant told him to go ahead. Roy stated that he found a large pipe inside the house, right behind the front door. The steel pipe was then introduced into evidence.

According to appellant's testimony, Michael came to the house and started beating on the door and window. Appellant stated that he went outside to stop Michael from breaking the window and that Michael had the steel pipe in his hand, so he hit him a couple of times to get the pipe from him. Appellant testified that Michael injured his head either during their scuffle or when he fell off the porch. Appellant admitted in his testimony that the pipe was so heavy, "it would knock a dent in the concrete" if it were dropped and that if it had any force behind it, "it would have cracked the skull." Appellant stated that this was the reason he tried to get the pipe from Michael, because he did not want him to beat on the window or door with it.

Following the evidence, the trial court found appellant guilty of second-degree battery against Michael, stating that it appeared to be an "unprovoked attack" and that the pictures of Michael's head injury were consistent with his testimony that he was hit on the back of the head. The trial court sentenced appellant as a habitual offender to three years' imprisonment for each conviction, with both sentences to run concurrently.

In Case No. CR2008–2319, appellant argues that the trial court erred in denying his motion to dismiss because there was insufficient proof that he was not acting in self-defense "in reaction to Michael working in concert with Robert regarding the gun and Robert's admitted plan to shoot Appellant." A motion to dismiss, which is identical to a motion for a directed verdict in a jury trial, is a challenge to the sufficiency of the evidence. *Green v. State*, 79 Ark. App. 297, 87 S.W.3d 814 (2002). When reviewing a challenge to the sufficiency of the evidence, the appellate court will affirm the conviction if there is substantial evidence to support it, when

viewed in the light most favorable to the State. *Delamar v. State,* 101 Ark. App. 313, 276 S.W.3d 746 (2008). Substantial evidence is evidence that is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or another without resort to speculation or conjecture. *Id.*

A person commits domestic battering in the second degree if, "with the purpose of causing physical injury to a family or household member, the person causes physical injury to a family or household member by means of a deadly weapon." Ark.Code Ann. § 5–26–304(a)(2) (Supp.2009). "A person acts purposely with respect to his or her conduct or a result of his or her conduct when it is the person's conscious object to engage in conduct of that nature or to cause the result." Ark.Code Ann. § 5–2–202(1) (Repl.2006). The defense of justification, because it is a matter of a defendant's intent, is a question of fact to be decided by the trier of fact. *Smith v. State,* 30 Ark. App. 111, 783 S.W.2d 72 (1990).

The State asserts that appellant's argument is not preserved because he failed to specifically raise it in his motion to dismiss to the trial court. After the State rested its case at the trial, appellant made the following motion to dismiss:

> Your Honor, we don't think the State has met its burden of proving that [Appellant] didn't act in self-defense against his brother who had a gun. And, after hearing all the testimony of the different witnesses who have described what occurred that day, we think you can find that they've not met that burden and we would ask the Court to direct a verdict on the ground that they didn't prove that he was acting in self-defense.

The trial court denied the motion, and appellant renewed his motion at the close of all the evidence, stating that "they haven't overcome the burden of proof, that he did act in self-defense." The State contends that appellant did not mention Michael in his motion to dismiss based on self-defense and that therefore, this court need not consider his argument on appeal. We disagree that appellant's argument is not preserved; he made his motion to dismiss based on the lack of proof that he was not acting in self-defense due to the possession of a gun by his brother, and on appeal, he also argues that there is insufficient proof that he was not acting in self-defense because Robert had told Michael to get the gun. In any event, we find no merit to appellant's argument on this point.

As the State argues, appellant's contention that he acted in self-defense with regard to Michael because Robert told Michael to "get the gun" is based on a misinterpretation of Robert's testimony at trial. Michael was not involved in the fight between appellant and Robert, and according to Michael's testimony, he was merely helping his brother off of the ground after the fight when appellant came up behind him and swung the sickle at him. Further, Robert testified that he did not have possession of the gun until after appellant had battered both him and Michael. Michael also testified that he did not know about the gun until it fell out of Robert's pants after the altercation, when the police had arrived. Robert testified that it was at this point, after the gun had fallen out on the ground, that he told Michael to "get the gun." There was substantial evidence presented by the State that, with the purpose of causing physical injury to his brother, Michael, appellant caused physical injury to Michael by means of a deadly weapon. Thus, we affirm appellant's conviction for second-degree domestic battery in Case No. CR2008–2319.

In Case No. CR2009–2424, appellant argues that substantial evidence does not support his conviction for second-degree domestic battery, because the State failed to prove that the steel pipe that he used to commit the battery met the definition of a "deadly weapon" under Ark.Code Ann. § 5–1–102(4) (Supp.2009). The State again asserts that appellant's argument is not preserved for appeal.

In his dismissal motion at the close of all the evidence, appellant argued that the trial court "should take into consideration the statements that Michael has made the whole day, actually, and consider his credibility before the Court comes to any conclusion." At no point did appellant raise the argument he does on appeal; namely, that the State failed to prove the steel pipe was a deadly weapon, because no one testified that the pipe met the definition of a deadly weapon and no forensic evidence was introduced linking the pipe found by Officer Roy to the crime. Under Arkansas Criminal Procedure Rule 33.1 (2010), the defendant must make a specific dismissal motion that advises the trial court of which element of the crime the State has allegedly failed to prove. *E.g., Webb v. State,* 327 Ark. 51, 938 S.W.2d 806 (1997). Also, a defendant cannot change the grounds for his argument on appeal but instead is bound by the scope and nature of the arguments made at trial. *Campbell v. State,* 319 Ark. 332, 891 S.W.2d 55 (1995). Because appellant failed to raise to the trial court the particular grounds he now argues on appeal, we decline to address his argument, and we affirm appellant's conviction in Case No. CR2009–2424 as well.

Affirmed.

GLOVER and ABRAMSON, JJ., agree.