

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CR–16–241

| | | |
|---|---|---|
| JIMMY DEWAYNE MAY | | **Opinion Delivered:** December 14, 2016 |
| | APPELLANT | |
| | | APPEAL FROM THE SEBASTIAN |
| V. | | COUNTY CIRCUIT COURT, FORT |
| | | SMITH DISTRICT |
| | | [NO. 66CR–15–607] |
| STATE OF ARKANSAS | | |
| | APPELLEE | HONORABLE STEPHEN TABOR, JUDGE |
| | | AFFIRMED |

## RITA W. GRUBER, Judge

Jimmy Dewayne May was charged in the Circuit Court of Sebastian County with simultaneous possession of drugs and firearms, possession of methamphetamine, possession of firearms by certain persons, and possession of drug paraphernalia. He was arrested in the parking lot of a Fort Smith sporting-goods store after having purchased magazines for a 38 mm Ruger, which he had with him, and after police discovered a glass smoking pipe, a scale, syringes, and a suspected bag of methamphetamine in his truck. He was convicted by a jury of simultaneous possession of drugs and firearms, possession of methamphetamine, and possession of drug paraphernalia, and was sentenced as a habitual offender to consecutive terms of imprisonment totaling thirty years. He now appeals, contending that the trial court erred in failing to suppress the evidence based on an illegal search. He argues that the evidence from his truck was obtained in violation of Rules 2.2 and 3.1 of the Arkansas Rules

SLIP OPINION

of Criminal Procedure[1] and his rights under our state and federal constitutions. He points to the testimony given at the suppression hearing by State's witnesses Billie Knittig, co-owner of the Tackle Box store and Officer Jeffery Taylor, Jr., of the Fort Smith Police Department.

Ms. Knittig testified that she called the police department because she was suspicious of a male and a female who were "wandering around the store, up and down the aisles . . . had been there a couple of hours and hadn't bought anything" and because she thought—after she watched them "picking [their] skin" and "noticed their teeth"—that they might be on drugs. Officer Taylor testified that he was dispatched to the Tackle Box in response to a call about "suspicious subjects . . . two people inside that had been there for approximately two hours . . . acting very strange" and who had gotten into a black pickup truck with Louisiana tags. He drove to the store in his marked patrol car and in uniform, and he got out to make contact with the people in the truck. His purpose was to identify the people and "figure out why they were in the store for so long, what the strange behavior was." He noticed that the driver was sweating a lot and both people were "very nervous, shaking a lot." After getting their names and checking for warrants, he discovered warrants for both of them and arrested

---

[1]A law-enforcement officer has authority to "request any person to furnish information or otherwise cooperate in the investigation or prevention of crime." Ark. R. Crim. P. 2.2 (2016). An officer "lawfully present in any place may, in the performance of his duties, stop and detain any person who he reasonably suspects is committing, has committed, or is about to commit" a felony or certain misdemeanors. Ark. R. Crim. P. 3.1. A suspicion is reasonable if it is "based on facts or circumstances which of themselves do not give rise to the probable cause requisite to justify a lawful arrest, but which give rise to more than a bare suspicion; that is, a suspicion that is reasonable as opposed to an imaginary or purely conjectural suspicion." Ark. R. Crim. P. 2.1.

May. Taylor requested May's permission to search the truck, and May consented. The items leading to May's arrest were found when Taylor and backup officers conducted the search.

The State asserted at the conclusion of the pretrial hearing that everything Officer Taylor did was valid under Rule 2.2. The State argued that Taylor's initial approach to the vehicle was legal based on information the police received from the store owner; that Taylor "verified that [both people] had warrants"; and that May freely and voluntarily consented to the search of his vehicle after his valid arrest on the warrant. May argued that Taylor testified only that he was there "to investigate strange behavior" and was unable to articulate a specific offense that he was investigating. He argued, "If we look at that versus a Rule 3.1 stop, that must be based on reasonable suspicion that the person stopped has committed or is about to commit a felony or misdemeanor." Finally, he argued that the officer had neither "reasonable suspicion nor probable cause to make the stop or reasonable suspicion to even make the contact." In a written order, the circuit court denied May's motion to suppress without ruling on his arguments.

May filed a motion for reconsideration and a supporting brief based on rules of criminal procedure and constitutional rights. He argued that "Officer Taylor failed to provide a specific, particularized, and articulable reason indicating that Mr. May might have been involved in criminal activity." The State responded that Officer Taylor's initial encounter with May was legal under Rule 2.2 when he made contact with May and his passenger to inquire who they were and why they had been at the Tackle Box for at least two hours; that only after learning that May had a valid warrant for arrest did Taylor arrest him on the

warrant; that May then gave consent to search the vehicle; and that the items in the vehicle were seized pursuant to his consent. The State argued that the seized items were not causally connected to the initial encounter; rather, there was a valid warrant for May's arrest, he was arrested on the warrant, and he then gave consent to the search of his truck. The State concluded that the valid arrest warrant broke the causal connection between the encounter and the seizure, or, alternatively, that the warrant was an extraordinary intervening circumstance that purged any taint from the initial contact.

The circuit court issued a written order that denied May's motion for reconsideration and made the following findings:

> Assuming, arguendo, Defendant is [correct] in arguing his original detention was not authorized, his motion must nevertheless fail. The Court notes the search took place only *after* officers were advised of an active warrant for Defendant's arrest. There is nothing in the record which suggests the search would have occurred absent this discovery. Therefore, there was an independent and intervening factor which led to Defendant's arrest and the subsequent search, thereby removing any taint that may have existed.

The case proceeded to trial, and May again renewed his motion to suppress. The motion was again denied.

May argues on appeal that police lacked reasonable suspicion to make contact with him and that the evidence found in his truck was obtained in violation of Rules 2.2 and 3.1 of the Arkansas Rules of Criminal Procedure, as well as article 2, section 15 of the Arkansas Constitution.[2] He contends that the evidence should have been suppressed because Officer

---

[2]The right of the people of this State to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. Ark. Const. art. II, § 15.

Taylor did not have reasonable suspicion or probable cause to make the stop or reasonable suspicion to even make contact with him. He does not, however, challenge the circuit court's finding that, even if his initial detention was not authorized, the officer's discovery of the arrest warrant was an independent and intervening factor that led to his arrest and the subsequent search, thereby removing any taint that may have existed. When an appellant fails to attack a circuit court's independent, alternative basis for its ruling, we will not reverse. *Barber v. State*, 2015 Ark. App. 120, at 5 (citing *Pugh v. State*, 351 Ark. 5, 89 S.W.3d 909 (2002)).

Because May does not challenge the circuit court's alternate, independent basis for denying his motion to suppress, we affirm.

Affirmed.

VIRDEN and HIXSON, JJ., agree.

*David L. Dunagin*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Rebecca Kane*, Ass't Att'y Gen., for appellee.