Cite as 2017 Ark. App. 287


# ARKANSAS COURT OF APPEALS

DIVISION II
No. CR-16-806

| | |
|---|---|
| BRANDON DUANE WILLIAMS | **Opinion Delivered:** May 10, 2017 |
| APPELLANT | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, SEVENTH DIVISION [NO. 60CR-14-3256] |
| V. | |
| STATE OF ARKANSAS | |
| APPELLEE | HONORABLE BARRY ALAN SIMS, JUDGE |
| | AFFIRMED IN PART; REVERSED AND REMANDED IN PART |

## RAYMOND R. ABRAMSON, Judge

Appellant Brandon Duane Williams was convicted by a Pulaski County jury of first-degree domestic battering. On appeal, he contends that the circuit court erred in denying his motions for directed verdict. Williams also argues that this court should reverse his conviction because during the State's closing argument, the prosecutor made an inflammatory argument that was "far beyond the bounds of the charges and evidence in the case, and the argument was calculated solely to appeal to the jury's passions rather [than] to its sense of reason." Finally, Williams asserts that we should vacate his sentence because during the sentencing phase of his trial, the circuit court ordered its bailiff to handcuff him and "the court did so without any regard for the specific circumstances of his trial." For the following reasons, we affirm in part and reverse and remand in part.

Williams's conviction arose from his conduct in the shooting of Cordell Nichols in August 2014. On May 16, 2016, he was sentenced to twenty years in the Arkansas Department of Correction (ADC). His sentence was enhanced by twelve years for employing a firearm in the commission of the offense and by an additional eight years for committing the offense in front of a child, for a total of forty years in the ADC.[1]

At trial, Williams moved for a directed verdict on the basis that the evidence was insufficient as to first-degree domestic battering because, at the time of the incident, he was not a member of the victim's family or of the victim's household. The circuit court denied both his motion for directed verdict and his renewed motion for directed verdict, which we now review.

Under Arkansas Code Annotated section 5–26–303(a)(1) (Repl. 2013), a person commits first-degree domestic battering if the person, with the purpose of causing serious physical injury to a family or household member, causes serious physical injury to a family or household member by means of a deadly weapon. Family or household member specifically includes "persons who presently or in the past have resided or cohabited together." *See* Ark. Code Ann. § 5–26–302(2)(F). The statute contains no time limits.

A motion for a directed verdict is a challenge to the sufficiency of the evidence. *Steele v. State*, 2014 Ark. App. 257, 434 S.W.3d 424. When the sufficiency of the evidence is challenged on appeal from a criminal conviction, we consider only that proof that supports the conviction. *Singleton-Harris v. State*, 2014 Ark. App. 436, 439 S.W.3d 720. We view

---

[1]On May 9, 2016, Williams entered a guilty plea to unlawful possession of a firearm and received a concurrent sentence of twenty years in prison.

that evidence and all reasonable inferences deducible therefrom in the light most favorable to the State. *Davis v. State*, 2015 Ark. App. 234, 459 S.W.3d 821. We will affirm if the finding of guilt is supported by substantial evidence. *Id.* Evidence is substantial if it is of sufficient force and character to compel reasonable minds to reach a conclusion and pass beyond suspicion and conjecture. *Clayton v. State*, 2011 Ark. App. 692. The jury is free to believe all or part of a witness's testimony, and we do not weigh the credibility of witnesses on appeal, as that is a job for the fact-finder and not the appellate court. *Sizemore v. State*, 2015 Ark. App. 295, 462 S.W.3d 364.

Viewing the evidence, as we must, in the light most favorable to the State, the record shows that Williams was 22 years old when he shot Cordell Nichols. Nichols married Williams's mother when Williams was "about seven or eight." They were married for six and a half years before they were divorced. According to Williams, he was between 13 and 15 years old when he stopped living with Nichols. Williams's mother later passed away, but Nichols said that he and Williams remained in contact, and he continued to treat him like a son. Nichols is the father of several children, three of whom are Williams's sisters. It was a dispute concerning the sisters that led Williams to shoot Nichols.

We believe it is clear from the evidence that Williams and Nichols were persons who in the past had resided together. The evidence at trial established, and Williams admits in his brief, that he had resided with Nichols for several years while his mother was married to Nichols. Williams also does not deny that the statute contains no express time limitation. Therefore, the circuit court properly denied his motions for directed verdict.

Williams's second point on appeal is that his conviction should be reversed because

of an improper closing argument by the State. In reviewing closing arguments, the circuit court "has discretion to control closing argument and is in a better position to determine the possibility of prejudice by observing the argument first hand." *Wainwright v. State*, 302 Ark. 371, 387, 790 S.W.2d 420, 428 (1990). The appellate court will not reverse the action of the circuit court in matters pertaining to its controlling, supervising, and determining the propriety of the arguments of counsel in the absence of manifest gross abuse. *Rowland v. State*, 263 Ark. 77, 84, 562 S.W.2d 590, 594 (1978). "Although it is not good practice for counsel to inject their personal beliefs into the closing arguments, mere expressions of opinion by counsel in closing argument are not reversible error so long as they do not purposely arouse passion and prejudice." *Jefferson v. State*, 372 Ark. 307, 321–22, 276 S.W.3d 225–26 (2008) (citing *Neff v. State*, 287 Ark. 88, 94, 696 S.W.2d 736, 740 (1985)).

At trial, the gun used to shoot Nichols was not introduced into evidence because it was never found. Williams testified that although he entered Nichols's house with a gun, it was actually his friend Alonti Weaver who shot Nichols. After the shooting, both men ran through a field near Nichols's house to get to the car. Police pulled the car over shortly thereafter. The prosecutor stated the following in closing argument: "Why is that? Because Brandon Williams had the gun used in this crime. It's probably ditched in that field somewhere on his way back to the getaway car that he had his wife slide into the driver's seat of." Williams objected, arguing that there was no evidence "about something being ditched in the field." The court responded, "It's too late. Sorry." Williams replied, "Okay. I am sorry," and the State's argument continued.

We cannot say that the prosecutor's comments were calculated or said with the

purpose of arousing any passion or prejudice of the jury. Our supreme court has long held that "a reversal of a judgment due to remarks made by counsel during closing arguments is rare and requires that counsel make an appeal to the jurors' passions and emotions." *See Price v. State*, 365 Ark. 25, 37, 223 S.W.3d 817, 826 (2006); *Mills v. State*, 322 Ark. 647, 910 S.W.2d 682 (1995); *Wetherington v. State*, 319 Ark. 37, 889 S.W.2d 34 (1994). Such is not the case here; therefore, we affirm on this point.

Williams's final argument is that it was error for the circuit court to place him in shackles during the sentencing phase of the trial. We agree. After the jury convicted Williams, but before the sentencing phase, the following colloquy occurred between the circuit court and Williams's counsel:

MR. GREENE: Could we keep him un-handcuffed—

THE COURT: No.

MR. GREENE: —during the sentencing part?

THE COURT: No. It's my—it's my—not my policy. It's what I always do.

MR. GREENE: Well, I'd object.

THE COURT: My standard practice.

MR. GREENE: It's going to prejudice the jury against him during sentencing.

THE COURT: He can keep them very nicely tucked under the—

MR. GREENE: Well, no, I can't say okay because they'll say I didn't object. No, I object.

THE COURT: All right. Good deal.

In *Deck v. Missouri*, 544 U.S. 622, 632 (2005), the Supreme Court of the United States held that courts may not routinely place criminal defendants in visible restraints during

5

trial, that shackling must be justified by the circumstances of the particular case, and that no showing of prejudice is required to establish a due-process violation from a routine use of visible shackles. *See also Williams v. State*, 2011 Ark. App. 468 (citing *Deck* standard).

The United States Supreme Court concluded that "the Fifth and Fourteenth Amendments prohibit the use of physical restraints visible to the jury absent a trial court determination, in the exercise of its discretion, that they are justified by a state interest specific to a particular trial." *Deck*, 544 U.S. at 629. The Court in *Deck* recognized the "need to restrain dangerous defendants to prevent courtroom attacks [and] . . . to give trial courts latitude in making individualized security determinations." *Id.* at 632.

However, in the instant case, the circuit court did not make an individualized security determination. The court emphasized that it was its standard practice to put the defendant in handcuffs. While the court noted that Williams could tuck his handcuffs under, we have no way of knowing if they were still visible to the jurors—or what impact that may have had when the jury was deciding Williams's sentence. Therefore, we must reverse and remand for another sentencing hearing with Williams either unshackled or the circuit court explaining in more depth the specific "need to restrain" in this case. We hold that the circuit court's policy to keep all defendants in handcuffs is in direct violation of *Deck*. Accordingly, we affirm in part and reverse and remand in part.

Affirmed in part; reversed and remanded in part.

HIXSON and MURPHY, JJ., agree.

*Terrence Cain* and *Jimmy C. Morris, Jr.*, for appellant.
*Leslie Rutledge*, Att'y Gen., by: *Vada Berger*, Ass't Att'y Gen., for appellee.