

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CR-17-15

| | |
|---|---|
| STEVEN WAYNE WHEELER<br>APPELLANT | **Opinion Delivered:** October 18, 2017 |
| V. | APPEAL FROM THE SALINE COUNTY<br>CIRCUIT COURT<br>[NO. 63CR–16–303] |
| STATE OF ARKANSAS<br>APPELLEE | HONORABLE GARY ARNOLD,<br>JUDGE |
| | AFFIRMED |

## WAYMOND M. BROWN, Judge

Appellant appeals from his convictions of battery in the second degree, a Class D felony; and domestic battering in the third degree, a Class D felony. On appeal, he argues that there was insufficient evidence to support either conviction. We affirm.

### I. *Facts*

An altercation of some sort occurred between George Charles Hutcheson[1] and appellant—the details of which are disputed—on April 5, 2016. During the altercation, appellant hit Hutcheson in the face with a glass beer bottle. Appellant was charged by criminal information, filed May 19, 2016, with battery in the second degree pursuant to Arkansas Code Annotated section 5-13-202, alleging that he "did unlawfully and feloniously on or about April 5, 2016 strike his 66 year old roommate with a glass bottle in the face

---

[1]Hutcheson is also referred to below as "Curtis."

causing physical injury." The incident report from Officer Seth Hopkins, attached to the

information, states that:

> On 4/9/2016 at 8:14 am I responded to 708 W. Cross in reference to a disturbance (See incident 2016-02025). While investigating that disturbance I observed swelling, redness, and bruising to the left eye of George Hutcheson. Mr. Hutcheson stated he was struck in the face by a beer bottle on 4/5/2016 by Steven Wheeler, who lives with Mr. Hutcheson. He stated that Mr. Wheeler just got angry and hit him with the beer bottle. Bruce Brotherton, who also lives at the residence, stated that he saw Mr. Wheeler hit Mr. Hutcheson in the face with the beer bottle.
>
> I attempted to ask Mr. Wheeler about the incident. However, he became angry after being read his [M]iranda rights and would not talk to me.

A second information was filed on August 31, 2016, asserting that appellant was a habitual

offender pursuant to Arkansas Code Annotated section 5-4-501.[2] Finally, an amended

information was filed on September 1, 2016, adding a charge of domestic battering in the

third degree pursuant to Arkansas Code Annotated section 5-26-305.[3] A trial on the matter

was held on September 9, 2016.

At the opening of the hearing, the circuit court noted that appellant had a probation

revocation, case number 2015-468, and a trial, case number 2016-303, set for the day.

Appellee notified the circuit court that the battery charges were alternative charges in which

it sought to prove appellant's guilt on one charge or the other.

Hutcheson testified that he was sixty-six years old and had lived as 708 West Cross

Street in Benton for about nine years; his brother, Mitchell Hutcheson, lived with him.

Regarding appellant's living arrangement in the home, he testified:

---

[2](Supp. 2015).

[3](Supp. 2015).

Mr. Wheeler came in and out of my house. He never did stay, stayed a night or two and gone. Oh, something like that and leave and the next thing you know, when he left, he would come back for his clothes. It might have been a little bit further than April of this year. He wasn't staying there on April 5th of this year. He was there, never did tell him he could stay there. He paid me $20. No, he didn't give me that when he stayed there. He just give me twenty dollars for the time he was there. I don't really count that for anything. I'm renting my home. He isn't on the lease. No, just paying rent. No, he wasn't there as a guest. He didn't come and go as he pleased; not really. I didn't ever want him there to start with. He was never invited to stay.

Regarding the incident giving rise to the charge, Hutcheson testified that he was sitting in the kitchen talking when appellant "hit [him] in the eye with a beer bottle"; he said "it hit [his] eye all the way around[.]" He denied that he and appellant were fighting or that he started an argument with appellant; he said they were just sitting there talking. Both he and appellant were "drinking a little at the time," noting that he and the other two residents were drinking a beer;[4] he had drunk half a twelve-pack of beer and appellant was drinking beer and a "fifth of whiskey."

Brotherton testified that appellant came to visit the home at 708 West Cross Street and "came and went as he pleased" though "[n]obody told him he [sic] come and go, [he meant], he just come when he felt like it." He said appellant had access to the house "any time day or night" and was spending the night at the house on the date of the altercation. Regarding the altercation, he testified that "[n]othing unusual happened on April 5th, other than the fact that [appellant] and Mr. Hutcheson got to drinking, they got into a heated argument and the more whiskey Mr. Wheeler drank than [sic] the more it got him, and then he picked up a bottle of beer out of the sink and hit Mr. Hutcheson in the left eye,

---

[4]He also testified that a Bruce Brotherton lived in his home.

and it was over about as quick as it started." He said that "they [sic] was words said, the more they said the more Mr. Wheeler drank the madder he got and he picked up a bottle of beer and hit Mr. Hutcheson in the left eye." He did not see Hutcheson make "any kind of aggressive move toward Mr. Wheeler or threaten him." He had "no idea what was going on" or "what was being said" to cause the altercation as he "didn't try to put his nose in their business." Mitchell was living there and was also in the house during the altercation.

Mitchell testified that appellant hit him as well during the altercation, "crack[ing] him on [his] cheek bone." He denied that there was "any arguing going on or a heat [sic] discussion" before appellant hit Hutcheson. Mitchell did not "think his brother [Hutcheson] did anything that provoked" appellant and had "never seen [Hutcheson] strike [appellant]."

Officer Seth Hopkins testified to responding to a call to the residence on April 9, 2016. Hutcheson told him that being struck by appellant "caused the small amount of blood, the fresh blood, not the large swelling to his mouth." He stated that he observed the injury, including other swelling to his face, and "could tell it was a bit older cause it was kind of yellowish." He stated that you could tell that Hutcheson "had been hit with something because his face was pretty swollen." Hopkins visited with appellant who was Mirandized and would not speak to him.[5]

Following Hopkins's testimony, appellant moved for a directed verdict on multiple grounds. The motion was denied on all grounds with the exception of whether appellee proved that appellant knew Hutcheson's age, an element under one variation of domestic

---

[5]Officer Zachary McAnally also testified, but his testimony is irrelevant to the issues on appeal before this court.

battering in the second degree. The circuit court chose not to rule on that motion stating that it needed to do some research on what it meant for appellant to know that Hutcheson was sixty years old or more.[6]

Appellant then testified. He stated that he had just gotten out of jail when he arrived at Hutcheson's home. He confirmed that he, Hutcheson, and Mitchell were drinking. He stated that Hutcheson was "as drunk as [him]" and would be "arguing about everything" and that the argument was "mainly, about [appellant], about kicking [appellant] out." Regarding the altercation, he testified:

> [Hutcheson] drinks out of the bottle of whiskey, and I had a bottle on the table and they was [sic] arguing about something and next thing I know, me and [Hutcheson] got in a struggle, and the next thing I know I grabbed something, I know I grabbed something, and I swung it and we got into a little tussle. . . . [Hutcheson] fell over and hit the ground. I picked him up and noticed I had hit him.
> . . . .
>
> Mr. Hutcheson grabbed me and something like that and after he grabbed me I probably pushed him around a little bit and then he cut me down this left side of my arm.
> . . . .
>
> I remember getting into a rage. I think I grabbed something and hit him. That was after I had been cut. I didn't even know it was bleeding, until we was [sic] on our way to Hot Springs. I didn't see a knife. . . . That was in reaction for what he had done to me.
>  . . . .
>
> I had no alternative but to lash out at Mr. Hutcheson after I had been cut with a knife. I felt like that was all I could do.
> . . . .
>
> I never saw a knife and didn't realize I had been cut at the time.

---

[6]The circuit court erroneously said "sixty years of age or less."

Regarding his living situation in the home, he testified that he was homeless and living on the street, but "they were telling [him] to come by and stay the night." He stated that "[s]ometimes [he] would stay a week, sometimes a couple of days"; "just kind of off and on." He agreed that he was "attempting to stay and live [in the house] and they were trying to kick him out." Finally, he testified that he pled guilty to domestic battery in the third degree for attacking Mitchell on April 9, 2016; had two prior domestic–battery convictions; pled guilty to domestic battery in the second degree in November 2011; and identified three other felonies of which he had been convicted.

Following his testimony, appellant renewed his motion for directed verdict. The circuit court granted the motion on the charge of domestic battery in the second degree, but only on the element that appellant knew Hutcheson's age when he physically injured him. The motion was denied on all other bases.

Though the circuit court initially stated "that [the charges] are not lesser included, that he can't be convicted of both," the circuit court and the parties agreed after further discussion that appellant could be convicted of both charges though he could only be sentenced on only one charge. Accordingly, the circuit court found appellant guilty of both charges.[7] At the conclusion of the sentencing hearing, the circuit court sentenced appellant to 120 months' incarceration in the Arkansas Department of Correction in his revocation

---

[7]The circuit court also found that there was sufficient evidence that appellant violated his probation.

case and in his trial, but ordered the sentences to run concurrently.[8] This timely appeal followed.

## II. *Standard of Review*

Although appellant moved for a directed verdict, such a motion at a bench trial is a motion for dismissal.[9] A motion to dismiss at a bench trial and a motion for a directed verdict at a jury trial are both challenges to the sufficiency of the evidence.[10] In reviewing a challenge to the sufficiency of the evidence, we view the evidence in a light most favorable to the State, consider only the evidence that supports the verdict, and we affirm if substantial evidence exists to support the verdict.[11] Substantial evidence has sufficient force and character such that it will, with reasonable certainty, compel a conclusion one way or the other, without resorting to speculation or conjecture.[12]

---

[8]We note that the sentencing order shows that appellant was sentenced to 120 months' incarceration on each charge, despite the agreement between the parties and the court that the charges were made in the alternative. However, appellant makes no argument of error in his sentencing, nor does he raise any double jeopardy concerns regarding the convictions of second-degree battery and third-degree domestic battering. Thus, he has waived them.

[9]*Foster v. State*, 2015 Ark. App. 412, at 4, 467 S.W.3d 176, 179 (citing *Thornton v. State*, 2014 Ark. 157, 433 S.W.3d 216).

[10]*Id*. (citing Ark. R. Crim. P. 33.1 (2014)).

[11] *Inskeep v. State*, 2016 Ark. App. 135, at 5, 484 S.W.3d 709, 712 (citing *Gwathney v. State*, 2009 Ark. 544, 381 S.W.3d 744).

[12]*Id*. (citing *Campbell v. State*, 2009 Ark. 540, 354 S.W.3d 41).

III.    *Family or Household Member*

Appellant's first argument is that there was insufficient evidence to support his conviction for domestic battery in the third degree because he was not a family member or household member. We disagree.

A person commits domestic battering in the third degree if:

(1) With the purpose of causing physical injury to a family or household member, the person causes physical injury to a family or household member;

(2) The person recklessly causes physical injury to a family or household member;

(3) The person negligently causes physical injury to a family or household member by means of a deadly weapon[.][13]

"Family or household member," as applicable to this case, includes "[p]ersons who presently or in the past have resided or cohabited together."[14] The statute contains no time limits.[15]

Appellant's argument relies heavily on the assertion that "neither the victim nor the roommates [of the victim] considered Wheeler a resident." We cannot agree that said testimony is sufficient to overturn the decision of the circuit court. In *Delamar v. State*, this court stated that it would be absurd to accept the "proposition that there can be no substantial evidence of cohabitation where the fact of cohabitation is denied by the victim."[16] The testimony of the victim in a criminal case is not inviolable but, like the

---

[13]Ark. Code Ann. § 5-26–305(a)(1), (2), & (3). This court notes that all three sections were listed in the amended information.

[14]Ark. Code Ann. § 5-26–302(2)(H).

[15]*Williams v. State*, 2017 Ark. App. 287, at 2, 524 S.W.3d 5, 7.

[16]101 Ark. App. 313, 314, 276 S.W.3d 746, 747 (2008) (citing *Wrenn v. State*, 92 Ark. App. 167, 211 S.W.3d 582 (2005)).

testimony of any other witness, is subject to the scrutiny of the trier of fact.[17] Furthermore, this court views the evidence in the light most favorable to appellee, considering only the proof that supports the finding of guilt.[18]

Though his testimony was often contradictory in the same sentence, Hutcheson testified that appellant "came in and out of [his] house," "stay[ing] a night or two and gone." Appellant paid Hutcheson twenty dollars "for the time he was there." Brotherton testified that appellant "just come [sic] and go as he pleased," "had access to the house any time of day or night," and was "spending the night" on the night of the incident. Mitchell testified that appellant "can stay" in the home. Finally, despite denying that he lived with the victim and asserting that he was homeless, appellant testified that there was an argument when he arrived "mainly, about [him], about kicking [him] out." He said "they were telling [him] to come by and stay the night" and that he would "sometimes" stay a week and "sometimes" stay a couple of days.

What the parties considered their living arrangement is simply part of the evidence to be analyzed by the trier of fact, and this court has stated that the victim's characterization of a living arrangement is not dispositive of whether a person is a family or household member who had resided together presently or in the past.[19] It is well settled that the

---

[17]*Delamar v. State*, 101 Ark. App. 313, 314, 276 S.W.3d 746, 747 (2008).

[18]*Fuller v. State*, 99 Ark. App. 264, 265, 259 S.W.3d 486, 487 (2007) (citing *Payne v. State*, 86 Ark. App. 59, 159 S.W.3d 804 (2004)).

[19]*See Delamar, supra.*

credibility of witnesses is an issue for the trier or fact and not this court.[20] Furthermore, the trier of fact is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence.[21] Additionally, the trier of fact is not required to set aside common sense and need not view each fact in isolation, but it may instead consider the evidence as a whole.[22] This court holds that the circuit court did not err in finding that appellant was a family or household member for purposes of the statute.

## IV. *Age Requirement*

Appellant next argues that appellee did not prove that he had actual knowledge of the victim's age, an element of battery in the second degree. Despite this argument, this court notes that the circuit court granted appellant's motion for directed verdict with regard to battery in the second degree on the basis that he knowingly, without legal justification, caused physical injury to a person he knew to be an individual sixty years of age or older.[23] Accordingly, we do not address this argument.

---

[20]*Neal v. State*, 2016 Ark. App. 384, at 6, 499 S.W.3d 254, 258 (citing *Airsman v. State*, 2014 Ark. 500, 451 S.W.3d 565).

[21]*Id*.

[22]*Id*. (citing *Lewis v. State*, 2014 Ark. App. 730, 451 S.W.3d 591).

[23]Ark. Code Ann. § 5-13-202(a)(4)(C) (Supp. 2015). However, this court notes that the circuit court denied his motion with regard to battery in the second degree for acting with the purpose of causing physical injury to another person, causing physical injury to another person by means of a deadly weapon other than a firearm. *See* Ark. Code Ann. § 5-13-202(a)(2).

V.    *Purposely Caused Injury*

Appellant's third argument is that the appellee did not prove that he had a purpose to cause physical injury to another person, instead of defending himself; this is an element of both charged crimes. We disagree.

A presumption exists that a person intends the natural and probable consequence of his acts.[24] A person acts purposely with respect to his or her conduct or a result of his or her conduct when it is the person's conscious object to engage in conduct of that nature or to cause the result.[25] The defense of justification, because it is a matter of a defendant's intent, is a question of fact to be decided by the trier of fact.[26]

The entirety of appellant's argument relies on his own testimony. It is the responsibility of the trier of fact to make credibility determinations based on the evidence.[27] The trier of fact is not required to believe the testimony of a criminal defendant, who is the person most interested in the outcome of the proceeding.[28] The circuit court, as finder of fact, is free to believe the testimony of the State's witnesses as opposed to a defendant's self-

---

[24]*Hughes v. State*, 2015 Ark. App. 378, at 7, 467 S.W.3d 170, 175 (citing *Bell v. State*, 99 Ark. App. 300, 306, 259 S.W.3d 472, 476 (2007)).

[25]Ark. Code Ann. § 5-2-202(1) (Repl. 2013).

[26]*Brown v. State*, 2011 Ark. App. 150, at 6, 381 S.W.3d 175, 178 (citing *Smith v. State*, 30 Ark. App. 111, 783 S.W.2d 72 (1990)).

[27]*Muhammad v. State*, 2016 Ark. App. 285, at 5, 494 S.W.3d 440, 443 (citing *Wilson v. State*, 2016 Ark. App. 218, 489 S.W.3d 716).

[28]*Turner v. State*, 2012 Ark. App. 150, at 8, 391 S.W.3d 358, 363 (citing *Zones v. State*, 287 Ark. 483, 702 S.W.2d 1 (1985)).

serving testimony.[29] It is not the role of appellate courts to assess the credibility of witnesses.[30] We have long held that it is within the province of the trier of fact, and we are bound by the fact-finder's determination on the credibility of witnesses.[31] Accordingly, we cannot say that the circuit court erred.

However, we will note, as did the circuit court, that despite appellant's assertion that "he had no alternative but to lash out at Mr. Hutcheson," appellant testified that he "never saw a knife and didn't realize [he] had been cut at the time," not even realizing that he was bleeding until he was on his way to Hot Springs after the altercation.[32] The circuit court states that appellant's "conduct occurred long before he even realized a thought that he had been cut." Finally, it stated that in "[w]eighing the credibility of all the witnesses, the Court finds there was a discussion that better described as an argument that escalated and that the only physical action taken by anyone was [appellant] when he struck the victim, Mr. Hutcheson, Mr. Curtis Hutcheson, with a beer bottle." We find no error.

---

[29]*Muhammad*, *supra* (citing *Hale v. State*, 2009 Ark. App. 308).

[30]*Donaldson v. State*, 2016 Ark. App. 391, at 5, 500 S.W.3d 768, 771.

[31]*Id.* (citing *Burley v. State*, 348 Ark. 422, 430, 73 S.W.3d 600, 605 (2002)).

[32]It was after his initial testimony that he changed his testimony and stated that he "didn't agree that he didn't see a knife" and that there was a knife on the table, but he still testified that he did not see Hutcheson "cutting [him] specifically in the arm."

VI.   *Deadly Weapon*

Finally, appellant argues that appellee did not prove that a beer bottle was a deadly weapon.[33] "Deadly weapon" means "[a]nything that in the manner of its use or intended use is capable of causing death or serious physical injury[.][34] Appellant used a glass beer bottle to hit Hutcheson in his face, specifically hitting his eye. Pictures entered into evidence showed Hutcheson's eye was red and the surrounding area was bruised and swollen. Hutcheson testified that the initial injury was "worse" than pictured. Brotherton testified that appellant's eye was "swollen shut" and that the pictures were taken two or three days later. The bottle, being glass, was capable of even greater damage depending on force used and point of impact. We hold that the circuit court did not erred.

This court holds that there was sufficient evidence to support appellant's battery-in-the-second-degree and domestic-battering-in-the-third-degree convictions. We affirm.

Affirmed.

GRUBER, C.J., and WHITEAKER, J., agree.

*Dusti Standridge*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Brad Newman*, Ass't Att'y Gen., for appellee.

---

[33]Though this court affirms the circuit court's conviction of appellant of domestic battering in the third degree by virtue of causing physical injury to a family or household member, appellee also charged in its amended information that appellant negligently caused physical injury to a family or household member by means of a deadly weapon. *See* Ark. Code Ann. § 5-26-305(a)(1) & (3). Accordingly, the "deadly weapon" element was a part of each charge.

[34]Ark. Code Ann. § 5-1-102 (4)(B) (Repl. 2013).