Cite as 2021 Ark. App. 22

# ARKANSAS COURT OF APPEALS

DIVISION I
**No.** CR–20–295

| | |
|---|---|
| JEFFERY RYAN ALLEN | **Opinion Delivered:** January 20, 2021 |
| APPELLANT | |
| | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, SECOND DIVISION |
| V. | [NO. 60CR-18-4406] |
| STATE OF ARKANSAS | |
| APPELLEE | HONORABLE CHRISTOPHER CHARLES PIAZZA, JUDGE |
| | AFFIRMED |

## RAYMOND R. ABRAMSON, Judge

Jeffery Ryan Allen appeals his conviction of terroristic act. He argues that the circuit court erred by denying his directed-verdict motion and by admitting into evidence a pellet gun found in his car, Carolyn Coffman's testimony, and a pretrial identification. We affirm.

On November 16, 2018, the State charged Allen with terroristic act related to an October 5, 2018 road-rage incident in which Allen shot Amber Busby's vehicle with a pellet gun.

On December 12, Allen filed a discovery motion asking for all audio and visual recordings, including dash-camera, body-camera, and mobile-video recordings. On December 21, Allen filed a motion for preservation of evidence asking the State to preserve all evidence including body-camera and mobile-vehicle recordings.

Also on December 21, Allen filed a motion to suppress Busby's identification of him in a photo lineup. He alleged that the lineup was unduly suggestive, was unconstitutional in nature, and tainted any subsequent identification.

On September 3, 2019, the State filed a notice of intent to offer Rule 404(b) evidence and explained that it intended to introduce evidence that Allen had shot another vehicle in the same area the day following the incident with Busby.

The court held an omnibus hearing on December 5. At the hearing, Busby testified that she had been driving on Brockington Road in Sherwood between 4:30 and 5:00 p.m. on October 5, 2018, when a dark-colored sedan cut in front of her. She slammed on her breaks and avoided a collision with the car, but the male driver made unfriendly gestures toward her. She explained that she resumed driving and that the car followed her on the road. She stated that the driver then waved a black, rod-like object outside the driver-side window and that shortly thereafter, the rear window of her car completely shattered. Busby testified that she initially believed she had been shot but later realized that glass from the shattered window had hit her face. She explained that she put her vehicle in park and that she saw the male driver on the side of the road "taunting" her. Busby testified that another driver witnessed the incident and provided her with the license plate number for the dark-colored sedan.

The police arrived and ran the license. Busby testified that she heard from the police that the vehicle was registered to "Jeffery Allen" but that she did not know a Jeffery Allen. She further testified that following the incident, she went to the Sherwood Police

Department and that Detective Jeremy Swilley showed her a photo lineup of multiple suspects. She stated that the lineup did not include the suspects' names.

Detective Swilley testified that he met Busby at the Sherwood Police Department following the road-rage incident and that Allen became a suspect after a witness provided his license plate number. He stated that he did not know Allen prior to that date and that he used a computer program to generate a photo lineup using Allen's driver's-license photo. Swilley testified that he presented Busby with the lineup with Allen's photo and five photos of other men who had similar physical appearances to Allen. The photos were labeled with numbers. Swilley explained to Busby that the suspect may or may not be in the lineup, and Busby circled the number associated with Allen's photo. Following Detective Swilley's testimony, the court denied Allen's motion to suppress Busby's pretrial identification of him.

The court then addressed the State's Rule 404(b) evidence. Specifically, the State informed the court that it planned to call Carolyn Coffman, who would testify that Allen shot her vehicle while she was traveling near Brockington Road on October 6, 2018, the day after the incident with Busby. Allen objected to Coffman's testimony and argued that it was prejudicial and would not establish that Coffman's vehicle was shot. The court granted the State's motion to admit the evidence.

Allen then orally moved to suppress a pellet gun that officers seized from his vehicle at the time of his October 6 arrest following the incident with Coffman. He argued that officers located the pellet gun during a warrantless search of the car. In response to Allen's motion to suppress the gun, the State offered Officer Benjamin Witherspoon's testimony.

Witherspoon testified that on October 6, 2018, he and other officers responded to multiple emergency calls that an individual in a sedan had been shooting at other vehicles on the road. He testified that they located the vehicle, identified the driver as Jeffery Allen, and arrested him for driving with a suspended license. He further stated that due to Allen's arrest, they impounded his car and inventoried its contents. He testified that they located a black pellet gun in the car. He further testified that he had a body camera and that the patrol car had a camera. He had not reviewed the recordings associated with the traffic stop.

Following Witherspoon's testimony, Allen asked the court to reserve a ruling on his motion to suppress the pellet gun because he needed more time to inspect the inventory list. The court granted Allen's request.

Thereafter, on December 31, 2019, Allen filed a written motion to suppress the pellet gun found in his vehicle following his October 6 arrest based on an improper inventory search. He also filed a separate motion to suppress the pellet gun based on the State's failure to comply with its disclosure obligations and spoliation. He asserted that the State had failed to preserve and produce the recordings of his October 6 arrest; thus, the court should exclude the gun that officers seized during the arrest.

The court held a bench trial on January 6, 2020. The court first addressed Allen's outstanding motions to suppress the pellet gun, and Allen relied on his argument in his written motions. As to Allen's argument concerning an invalid search of his vehicle, the State responded that the officers executed a valid inventory search, and even if they did not, the pellet gun was in plain view from outside the car window. The court noted the State

4

did not "need a search warrant when [the gun] is in plain sight in the back seat." However, the court again reserved a ruling on the motions.

Busby and Detective Swilley testified consistently with their testimony from the pretrial hearing. Coffman then testified that on October 6, 2018, she was driving near Brockington Road when she saw a dark-colored sedan with a pole protruding from the rear driver-side window. She explained that as she moved away from the car to avoid the pole, two objects hit her car making loud noises. Coffman initially believed that the driver of the car had thrown rocks at her vehicle. She immediately drove to her sister's house and found a hole about the size of a finger in her car's passenger-side door.

Sergeant Clifford Manek testified that he assisted with the traffic stop of Allen on October 6, 2018. He stated that he saw the pellet gun between the two front seats in plain sight from outside the vehicle. Officer Witherspoon testified consistently with his testimony from the pretrial hearing that he found a pellet gun in Allen's car following his October 6 arrest. Witherspoon again testified that he had worn a body camera during his arrest and that his patrol car had a dash camera. He stated that the State had not been provided with the recordings from the cameras and that they were deleted six months following the incident.

During Witherspoon's testimony, the State sought to introduce the pellet gun. Allen renewed his objection to the gun based on an improper inventory search and discovery violations and spoliation. The court overruled Allen's objection and admitted the gun into evidence.

5

At the conclusion of the State's case, Allen moved for a directed verdict and argued that the State did not prove that he projected an object or shot the pellet gun at Busby's window causing the window to shatter. The court denied Allen's motion. Allen presented no evidence, and the court thereafter found him guilty of terroristic act. The court later sentenced Allen to thirty months' probation. This appeal followed.

On appeal, Allen first argues that the circuit court erred by denying his directed-verdict motion. He asserts that the State failed to establish that he projected any type of object toward Busby's vehicle, and he points out that the State presented no evidence that the pellet gun found in his vehicle was in working condition.

Although Allen moved for a directed verdict, such a motion at a bench trial is a motion for dismissal. *Wheeler v. State*, 2017 Ark. App. 540, 532 S.W.3d 602. A motion to dismiss at a bench trial and a motion for a directed verdict at a jury trial are both challenges to the sufficiency of the evidence. *Id*. In reviewing a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the State and consider only the evidence that supports the verdict. *Ealy v. State*, 2017 Ark. App. 35, at 2, 511 S.W.3d 355. We affirm a conviction if substantial evidence exists to support it. *Id*. Substantial evidence is that which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without resorting to speculation or conjecture. *Id*.

A person commits a terroristic act if, while not in the commission of a lawful act, the person shoots at or in any manner projects an object at a conveyance which is being operated

or which is occupied by another person with the purpose to cause injury to another person or damage to property. Ark. Code Ann. § 5-13-310(a)(1) (Repl. 2013).

In this case, we hold that the State presented sufficient evidence that Allen shot Busby's vehicle. Busby testified that she saw Allen wave a rod-like object outside his car window and immediately thereafter she heard a loud shot and her car window shattered. Further, Allen was arrested the following day with a pellet gun in his vehicle. Accordingly, the circuit court did not err in denying Allen's motion to dismiss.

Allen next argues that the circuit court erred by admitting the pellet gun found in his car because officers located the gun during an improper inventory search. We need not address Allen's argument because Allen fails to challenge an alternative basis for the circuit court's decision. When an appealing party leaves an alternate, independent ground unchallenged, the circuit court's ruling must be affirmed. *May v. State*, 2016 Ark. App. 605, 509 S.W.3d 14. Here, the State argued that the pellet gun was admissible on the basis of a valid inventory search as well as the plain-view doctrine. Allen does not contest that the plain-view doctrine applied here. Accordingly, we find no reversible error on this point.

Allen next argues that the circuit court erred by admitting the pellet gun into evidence because the State failed to comply with disclosure obligations and spoliation of the evidence. He cites Arkansas Rule of Criminal Procedure 17.1 and asserts that the State had the duty to provide the mobile-video and body-camera recordings of his October 6 arrest after he requested the recordings in his discovery motions. He points out that the recordings were destroyed, and he claims that without them, he had no means to impeach the officers regarding probable cause for his October 6 arrest that led to the discovery of the pellet gun.

7

On appeal, the standard of review for admission or rejection of evidence is abuse of discretion. *O'Neal v. State*, 356 Ark. 674, 683, 158 S.W.3d 175, 181 (2004). A prosecutorial discovery violation does not automatically result in reversal. *Duck v. State*, 2018 Ark. 267, 555 S.W.3d 872. The key in determining if a reversible discovery violation exists is whether the appellant was prejudiced by the prosecutor's failure to disclose. *Id.* Absent a showing of prejudice, we will not reverse. *Id.* An appellant cannot use the discovery rules as a substitute for his own investigation. *See Irvin v. State*, 28 Ark. App. 6, 771 S.W.2d 26 (1989).

We find no abuse of discretion in the circuit court's denial of Allen's motion to suppress the pellet gun because Allen cannot show he was prejudiced by the prosecutor's failure to disclose the recordings. Allen had a full opportunity to cross-examine the officers about their probable cause to arrest him both at the omnibus hearing and at the bench trial. *See Jackson v. State*, 2020 Ark. App. 379, 609 S.W.3d 418; *Turner v. State*, 325 Ark. 237, 246, 926 S.W.2d 843, 848 (1996). Further, Allen did not contest the legality of the traffic stop or his arrest for driving with a suspended license. He fails to show that the video would have altered the circuit court's ruling on the admissibility of the pellet gun or the outcome of the case. Given these circumstances, we cannot say that the circuit court abused its discretion.

Allen also argues that the circuit court erred by permitting Coffman to testify at trial pursuant to Arkansas Rule of Evidence 404(b). He asserts that her testimony did not fit any exception to the rule and that the road-rage incident involving Coffman is not similar to the incident with Busby.

Rule 404(b) allows evidence of other crimes, wrongs, or acts to be admitted for the purpose of showing "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Ark. R. Evid. 404(b) (2020). Evidence meets this test if it proves a material point but is not introduced solely to prove that the defendant is a bad person. *Fells v. State*, 362 Ark. 77, 84, 207 S.W.3d 498, 503 (2005). "The test for establishing motive, intent, or plan is whether the prior bad act has independent relevance." *Id*. Evidence is independently relevant if it tends to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. *Morris v. State*, 367 Ark. 406, 412, 240 S.W.3d 593, 597 (2006). Any circumstance that ties a defendant to the crime is independently relevant and admissible as evidence. *Id*.

While evidence of other crimes or bad acts may be admissible under Rule 404(b), to be probative under Rule 403, the prior crime or bad act must be similar to the crime charged. *Davis v. State*, 362 Ark. 34, 46, 207 S.W.3d 474, 483 (2005). The bad act does not have to be identical, just similar. *See id*. We have stated that Rule 404(b) applies to evidence of a subsequent bad act by an appellant. *Brasuell v. State*, 2015 Ark. App. 559, 472 S.W.3d 499.

As with other evidentiary determinations, our standard of review is abuse of discretion. *Id*. The degree of similarity between the circumstances of prior crimes and the present crime required for admission of evidence under Rule 404(b) is a determination that affords considerable leeway to the circuit court and may vary with the purpose for which the evidence is admitted. *Id*.

9

In this case, we cannot say that the circuit court abused its discretion by permitting Coffman to testify pursuant to Rule 404(b). Coffman's testimony demonstrates Allen's intent or absence of mistake. Both Coffman and Busby testified that they were driving in the same area within one day of each other when an individual in a dark-colored sedan projected an object toward their vehicles that resulted in damage to their cars. Accordingly, we find no error on this point.

Allen lastly argues that the circuit court erred by admitting Busby's pretrial identification of him. A pretrial identification violates the Due Process Clause when there are suggestive elements in the identification procedure that make it all but inevitable that the victim will identify one person as the criminal. *Bishop v. State*, 310 Ark. 479, 839 S.W.2d 6 (1992). Even if the identification technique used was impermissibly suggestive, however, testimony concerning it is admissible if the identification was reliable. The following factors are considered in determining reliability: (1) the prior opportunity of the witness to observe the alleged act; (2) the accuracy of the prior description of the accused; (3) any identification of another person prior to the pretrial identification procedure; (4) the level of certainty demonstrated; (5) the failure of the witness to identify the defendant on a prior occasion; and (6) the lapse of time between the alleged act and the pretrial identification. *Hardrick v. State*, 47 Ark. App. 105, 112, 885 S.W.2d 910, 913 (1994). It is the appellant's burden to show that a pretrial identification was suspect, and we will not reverse a circuit court's ruling on the admissibility of identification evidence unless it is clearly erroneous. *Bradley v. State*, 2009 Ark. App. 714, 370 S.W.3d 263.

Here, Allen claims Busby's pretrial identification of him was based on an impermissibly suggestive procedure because Busby heard an officer recite Allen's name prior to the identification. His argument is meritless. Even though Busby overheard officers state his name before the identification, she testified that she did not know Jeffery Allen and that the photo lineup did not include the suspects' names. Allen offers no other argument how the pretrial identification procedure was impermissibly suggestive. Accordingly, we hold that the circuit court was not clearly erroneous in admitting the pretrial identification into evidence.

Affirmed.

VIRDEN and HIXSON, JJ., agree.

*James Law Firm*, by: *Alex A. Morphis* and *William O. "Bill" James, Jr.*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Christian Harris*, Ass't Att'y Gen., for appellee.