Cite as 2022 Ark. App. 342

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CR-21-583

| | | |
|---|---|---|
| BOBBY GARRIN III | | Opinion Delivered September 21, 2022 |
| | APPELLANT | APPEAL FROM THE CRITTENDEN COUNTY CIRCUIT COURT [NO. 18CR-15-890] |
| V. | | |
| STATE OF ARKANSAS | APPELLEE | HONORABLE TONYA M. ALEXANDER, JUDGE |
| | | AFFIRMED |

## N. MARK KLAPPENBACH, Judge

Bobby Garrin III appeals from the decision of the Crittenden County Circuit Court to revoke his suspended imposition of sentence (SIS) on the basis of his commission of new offenses. Garrin argues that there was insufficient evidence to revoke his SIS because the victim's identification of him as the perpetrator of the new offenses was unreliable. We affirm.

In January 2016, Garrin pleaded guilty to two counts of terroristic act and one count of attempted first-degree murder. He was sentenced to ten years' imprisonment on one count of terroristic act, ten years' SIS on the other count of terroristic act, and twenty years' SIS on attempted murder. In April 2021, the State filed a petition to revoke, alleging that Garrin had violated the conditions of his SIS by failing to live a law-abiding life. The State

alleged that he had committed the new offenses of attempted capital murder, terroristic act, unlawful discharge of a firearm from a vehicle, and possession of a firearm by a felon.

At the revocation hearing, Kewanna Cleveland testified that on February 27, 2021, she was driving with her son and nephew in the car. Cleveland saw a burgundy car behind her flashing its lights and honking its horn. Cleveland initially thought it was another nephew who drove a car that same color, so she pulled over. However, when she pulled over, Cleveland saw that there were three men in the car, and two of them—the driver and the backseat passenger—had guns. Cleveland pulled away, heard gunshots, and turned down a cross street. The burgundy car kept driving straight. Cleveland saw the driver and the backseat passenger with their arms out of the windows shooting. Bullets hit her rear tire and rear bumper.

Cleveland testified that she got a good look at the driver, and in the courtroom, she identified Garrin as the driver. Cleveland said that at the police station, she "immediately" picked Garrin out of a photo lineup. She did not know either shooter before this incident, but her nephew, who she indicated was the shooters' intended target, told her the names of both shooters. She said that she was unable to identify the backseat shooter in a photo lineup because he was wearing a mask during the shooting. Garrin, however, was not wearing a mask, and Cleveland testified that he looked her "dead in [her] face." She said that at one point, Garrin's car was pulled up beside hers. Cleveland testified that a week before the hearing, she received a phone call from a woman who identified herself as the mother of Garrin's child and claimed that Garrin did not have anything to do with the

2

shooting. Cleveland said that she told the woman she knew it was Garrin because they looked each other directly in the face.

Police officers from the West Memphis Police Department testified that five shell casings were collected from the shooting, which they believed arose from a dispute over shoes allegedly stolen by Cleveland's nephew. The chief investigator for the Crittenden County Sheriff's Department played phone calls Garrin had made from jail and read email messages Garrin had sent. In one message to Shamiah Crawford, Garrin gave her Cleveland's name and phone number and asked Crawford to explain to Cleveland that he did not have anything to do with the situation and to tell her to please leave it alone and not come to court. In a message to Debra Garrin, Garrin asked Debra to see if she could convince Cleveland not to testify against him. In messages to both women, Garrin requested that they impersonate someone from the prosecutor's office and tell Cleveland that the court date had been postponed.

The circuit court found that Cleveland was credible and found by a preponderance of the evidence that Garrin had willfully violated the conditions of his SIS. The court sentenced Garrin to thirty years' imprisonment.

To revoke a suspended sentence, the circuit court must find by a preponderance of the evidence that the defendant has inexcusably failed to comply with a condition of the suspension. Ark. Code Ann. § 16-93-308(d) (Supp. 2021). We do not reverse a circuit court's decision to revoke unless it is clearly against the preponderance of the evidence. *Oliver v. State*, 2018 Ark. App. 300, 550 S.W.3d 879. Because the burdens of proof are

3

different, evidence that is insufficient for a criminal conviction may be sufficient for a revocation. *Id.* Since determinations of a preponderance of the evidence turn on questions of credibility and weight to be given testimony, we defer to the circuit court's superior position. *Id.*

Garrin argues that Cleveland's identification of him was unreliable because she learned his name from her nephew and because her identification of the two alleged shooters was "inconsistent." Garrin argues that on the day of the incident, Cleveland told police the name of the backseat shooter, but not Garrin's name. He claims that this was inconsistent with her knowledge two days later at the police station where she identified him in a photo lineup but was unable to identify the backseat shooter.

We find no merit in Garrin's arguments. Cleveland acknowledged on cross-examination that her handwritten statement from the day of the incident contained the name of the backseat shooter. Cleveland testified that immediately after the shooting, she asked her nephew who was shooting at them, and her nephew provided the names of both shooters. It is unknown what Cleveland told police about the driver on the day of the shooting because neither her handwritten statement nor the police report were admitted into evidence. Cleveland explained that she was unable to identify the backseat shooter in a photo lineup because he was wearing a mask during the shooting, and she did not get a good look at his face. Cleveland testified that Garrin was not wearing a mask, that he looked her "dead in [her] face," and that she got a good look at him. She denied receiving a description of Garrin from her nephew and said that the only things she learned from him

were the shooters' names and why they were shooting. Even though Cleveland had learned Garrin's name from her nephew, she testified that she did not know him and denied looking up pictures of him. *See Allen v. State*, 2021 Ark. App. 22, 617 S.W.3d 265. Cleveland's identification was thus based on her own observation of Garrin. Furthermore, we agree with the State that the evidence showing Garrin's attempts to silence Cleveland were relevant to prove the allegations. *See Rohrbach v. State*, 374 Ark. 271, 279, 287 S.W.3d 590, 597 (2008). We hold that the circuit court's decision to revoke Garrin's SIS was not clearly against the preponderance of the evidence.

Affirmed.

VIRDEN and WHITEAKER, JJ., agree.

*Bart Ziegenhorn*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Rebecca Kane*, Ass't Att'y Gen., for appellee.