Cite as 2023 Ark. App. 199

# ARKANSAS COURT OF APPEALS

DIVISION II
**No.** CR-22-567

| | |
|---|---|
| | **Opinion Delivered** April 12, 2023 |
| DAVID HASKELL GREEN | |
| APPELLANT | APPEAL FROM THE POPE COUNTY CIRCUIT COURT [NO. 58CR-16-72] |
| V. | |
| STATE OF ARKANSAS | HONORABLE JAMES DUNHAM, JUDGE |
| APPELLEE | |
| | AFFIRMED |

## BRANDON J. HARRISON, Chief Judge

The Pope County Circuit Court found that David Green had violated the conditions of his suspended imposition of sentence (SIS) and sentenced him to sixteen years' imprisonment. He now appeals, arguing that the State failed to prove that he had received the written conditions of his SIS and that the circuit court erred in finding that he had violated the conditions of his SIS. We affirm.

In January 2016, the State charged Green with failing to register as a sex offender. The criminal information also noted that Green is a habitual offender. Green pled guilty and received a sentence of four years' imprisonment and six years' SIS. The sentencing order included the following notation: "SUSPENDED IMPOSITION OF SENTENCE CONDITIONED UPON DEFENDANT LIVING A LAW-ABIDING LIFE – NOT COMMITTING ANY OFFENSE PUNISHABLE BY IMPRISONMENT." In August 2021, the State petitioned for revocation of Green's SIS, alleging that he had committed

new offenses of harassment, terroristic threatening, and disorderly conduct.

The circuit court convened a revocation hearing, at which the following testimony was presented. Karri McClatchey, the funeral director at Shinn Funeral Service, testified that in January 2021, the funeral home was required to enforce a mask mandate and social distancing. The mandate dictated that all persons entering the building must wear a mask. On January 21, the receptionist reported to McClatchey that a gentleman (Green) had entered the building and was not wearing a mask. McClatchey approached Green, asked him to wear a mask, and attempted to hand him a mask. She described Green as "very aggravated," and he told her that "masks [do] not work and that I could shove the mask up my ass." McClatchey, who was six months pregnant, did not want the situation to escalate further, so she left and informed the owner, Ormond Peters, of the situation. Peters attempted to speak to Green, but Green immediately began yelling at Peters and making threats. Green followed Peters to the front door and told Peters that "he was going to find out where he lived and make his life hell" and "kick [his] ass." Green also "got really close" to Peters's face and was acting aggressively but did not make physical contact. McClatchey called the police while Peters was dealing with Green. She also said Green left in a dark-colored SUV with lights around the top of the vehicle.

Skyler Villeneuve, a funeral director at Shinn, witnessed the interaction between Peters and Green and confirmed that Green was "very aggressive; very intense." He also described Green's fists as "balled up." Villeneuve heard Green's statements to Peters, including calling Peters an "MF-er" and an "SOB," and Villeneuve saw Green leave in a black Chevy Trailblazer with LED lights around the roof rack.

2

Ormond Peters testified that he approached the room that Green was in and, while standing in the doorway, indicated to Green that he needed to speak to him. According to Peters, Green jumped out of his chair, walked toward him (Peters), and said he was going to "whip [Peters's] ass." Peters described Green as "inches from my face hollering at me." Peters told Green that he had to leave, then Peters turned and walked toward the front door. Green followed him and continued to scream at him. Peters also identified Green's vehicle as a black SUV with LED lights.

Three days later, Peters received a notification that a surveillance camera in front of his house had been motion activated, and he stepped outside to see Green's vehicle pulling out of his driveway. Green then circled around the end of the road, which was a dead end, and stopped in front of Peters's house, honked his horn, and flashed his LED lights. Peters said that he feared for his safety.

Green and his mother, who had also been present at the funeral home, testified that Peters had been the initial aggressor. They described how Peters had pointed his finger in Green's face and screamed at him. Green admitted saying, "I'm going to sue you and make your life hell," which he said explains why he later drove by Peters's house to verify that he had Peters's correct physical address.

The circuit court found that Green had violated the conditions of his SIS by committing the offenses of harassment, terroristic threatening, and disorderly conduct. As noted above, the court sentenced Green to sixteen years' imprisonment, and he has timely appealed.

To revoke a suspended sentence, the circuit court must find by a preponderance of

3

the evidence that the defendant has inexcusably failed to comply with a condition of the suspension. Ark. Code Ann. § 16-93-308(d) (Supp. 2021). We do not reverse a circuit court's decision to revoke unless it is clearly against the preponderance of the evidence. *Garrin v. State*, 2022 Ark. App. 342, 652 S.W.3d 608. Because the burdens of proof are different, evidence that is insufficient for a criminal conviction may be sufficient for a revocation. *Id.* Since determinations of a preponderance of the evidence turn on questions of credibility and weight to be given testimony, we defer to the circuit court's superior position. *Id.* Only one violation is necessary to support revocation. *Bennion v. State*, 2022 Ark. App. 290, 645 S.W.3d 37.

Green's first argument is that the State failed to prove that he had received the written conditions of his suspended sentence. He contends that neither he nor his attorney signed the sentencing order, and the conditions of his suspended sentence were not attached to the sentencing order. Thus, he was not placed on written notice that "living a law-abiding life" was a condition of his suspended sentence.

The State responds that the sentencing order clearly required Green to live a law-abiding life, as evidenced by the notation in all capital letters quoted above. In addition, both Green and his attorney initialed the bottom of both pages of the two-page sentencing order. Green and his attorney also signed an acknowledgment that he had received a copy of the sentencing order and "fully underst[ood] the above conditions which are being imposed on [him] and the consequences of [his] violating any of those conditions."

We hold that this argument is not preserved for review. Green did not raise this issue by pointing out to the circuit court that he had not been furnished a written statement

4

of his conditions or by objecting to the revocation hearing on that ground. Whether there is proof that a defendant received written conditions of probation or a suspended sentence is a procedural matter and not one of the sufficiency of the evidence. *Myers v. State*, 2014 Ark. App. 720, 451 S.W.3d 588; *Costes v. State*, 103 Ark. App. 171, 287 S.W.3d 639 (2008). Here, because Green did not object on this basis at his revocation hearing, his argument is not preserved for appeal.

Green also argues that the circuit court's findings were against the preponderance of the evidence because the State failed to prove that Green had committed any of the three charged crimes and therefore inexcusably violated a condition of his suspended sentence. As a reminder, the circuit court found that Green had violated the conditions of his SIS by committing the offenses of harassment, terroristic threatening, and disorderly conduct.

A person commits the offense of disorderly conduct if, with the purpose to cause public inconvenience, annoyance, or alarm or recklessly creating a risk of public inconvenience, annoyance, or alarm, he or she commits acts such as engaging in fighting or in violent, threatening, or tumultuous behavior; making unreasonable or excessive noise; or using abusive or obscene language in a public place and in a manner likely to provoke a violent or disorderly response. Ark. Code Ann. § 5-71-207(a) (Supp. 2021).

In its remarks, the circuit court found that the evidence of Green's disorderly conduct included not only bad language but also threats of harm and engaging in conduct that was likely to provoke a violent response. Green contends that there was no proof that he used foul language, nor was there evidence he did so in a manner likely to provoke a violent or disorderly response.

The State responds that the proof established by a preponderance of evidence that Green acted with the intent to cause alarm and used abusive language such that a violent response was likely. The State notes Green's threat to "kick [Peters's] ass" and to find out where he lived and "make [Peters's] life hell." The State also argues that the court was free to credit the testimony of the State's witnesses over Green's self-serving testimony that he had not threatened anyone or acted aggressively.

In addition to the testimony pointed out by the State, we note the testimony that Green used foul language in calling Peters an "MF-er" and an "SOB." Also, this language and Green's physical aggressiveness occurred in a public place. We hold that the circuit court did not err in finding by a preponderance of the evidence that Green had committed the offense of disorderly conduct and that this offense constituted a violation of the conditions of his SIS. Because only one violation is necessary to support revocation, we need not discuss the sufficiency of the evidence for the offenses of harassment and second-degree terroristic threatening.

Affirmed.

BARRETT and MURPHY, JJ., agree.

*Lassiter & Cassinelli*, by: *Michael Kiel Kaiser*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Clayton P. Orr*, Ass't Att'y Gen., for appellee.